[No. 4053.   Decided December 16, 1901.]

FRANK MISCHKE, *Appellant,* v. CITY OF SEATTLE, *Respondent.*

MUNICIPAL CORPORATIONS — OBSTRUCTIONS IN SIDEWALKS — LIABILITY OF CITY FOR PERSONAL INJURIES.

Where a city has exclusive control of the management of its streets and sidewalks, including the power of raising money for their construction and repair, a duty arises to the public to keep those thoroughfares in a reasonably safe condition for use in the ordinary modes of travel, and the city is liable for damages to those injured by a neglect to perform such duty.

SAME — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

Whether a pedestrian hurrying along a sidewalk, with his mind intent on business, and carrying an umbrella lowered in front of him for protection from wind and rain, is guilty of contributory negligence from the fact that he is injured by falling over an open trap door in the walk which had been authorized by the city for private purposes, is a question for the jury to determine from all the facts in the case, and not one of law for the court to decide.

Appeal from Superior Court, King County.—Hon. FRANK H. RUDKIN, Judge.   Reversed.

G. *Ward Kemp* and *Victor E. Palmer,* for appellant.

W. *E. Humphrey* and *Edward Von Tobel,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought by appellant, plaintiff below, to recover damages for personal injuries

occasioned by his falling over an obstruction on one of the public sidewalks in the city of Seattle. The obstruction in question consisted of two iron doors used to cover a hatchway in said sidewalk, which said doors and hatchway were maintained near the middle of said sidewalk for private convenience of the adjoining lot owners, with the full knowledge and consent of the city. The trial court, after hearing appellant's evidence, on motion by respondent, granted a non-suit on the ground that appellant was guilty of contributory negligence. The substance of the appellant's testimony in relation to the transaction, after describing the doors, is as follows:

"Question: You said you were coming down the street. Which way was the wind striking you then,—the wind and rain? Answer: The wind struck me right in front, in the face. Q. About how far in front of you could you see, in the way you had the umbrella? A. I could not see, only look right in the umbrella. Q. How? A. I looked right in the umbrella; I could not see nothing. Q. About how far could you see down ahead of you, if you looked down the sidewalk, the way your umbrella was held? A. Just a little ways. Q. What? A. I could not see any it was raining so hard."

The witness, upon cross-examination, stated that what he meant by looking into the umbrella was that he could see part of his umbrella in front of him when he was walking, but that it was raining and blowing so hard he could not see the doors which were raised upon the street, and that he struck his knees against one of the doors, was thrown forward and struck his head against the sharp edge of the opposite door; thereby sustaining the injuries complained of. It is earnestly contended by the respondent that the facts testified to by the appellant show conclusively that he was guilty of contributory negligence; that there was no dispute as to the facts; and that it was the

duty of the court to sustain the motion made for a non-suit. It is the well established law of the land that for the maintenance of a nuisance upon a sidewalk or highway the city is liable; that where a city is given exclusive power over its streets, such power must be exercised for the good of the general public, and that it cannot escape responsibility when it authorizes obstructions in a street, for merely private purposes. Elliott, Roads & Streets (2d ed.), § 653; *Costello v. State,* 108 Ala. 45 (18 South. 820, 35 L. R. A. 303); *McLeod v. Spokane, ante,* p 346.

It was said by the appellate court of New York in *Wendell v. Mayor,* 39 Barb. 329, that where municipal corporations or individuals are charged, as in the case of streets or highways, with the duty of keeping them in repair and exercising a general oversight in regard to their condition and safety, they, or the body they represent, are liable for all injuries happening by reason of their negligence; that the use of streets and highways is designed for the public for the purposes of passage, travel, and locomotion, and that the use of them by an individual simply for his own convenience and accommodation, unaccompanied by public uses, is unauthorized and essentially a nuisance, making not only the party maintaining such nuisance liable, but the public body also.

The right to sue cities in this state was established in *Sutton v. Snohomish,* 11 Wash. 24 (39 Pac. 273, 48 Am. St. Rep. 847), and *Saylor v. Montesano,* 11 Wash. 328 (39 Pac. 653). In *Sutton v. Snohomish,* it was held that where a city has exclusive control of the management of its streets, and the power to raise money for their construction and repair, a duty arises to the public, from the character of the powers granted, to keep its streets in a reasonably safe condition for use in the ordinary modes of travel, and the city is liable to respond in damages to those

injured by a neglect to perform such duty. It is also held that whether the alleged protection was provided by the city to guard travelers against accidents in the case of an excavation in a street was a question for the determination of the jury; and the fact that a traveler upon a highway, who had some knowledge of the excavation thereupon, upon coming on a dark night to a guard placed partially over the excavation, attempts to step around to one side, and falls into the excavation at a point left unprotected and unlighted, is not conclusive evidence of contributory negligence on his part; but that the question of negligence under such circumstances was properly submitted to the jury; the court in that case saying:

"Whether an ordinarily prudent and cautious man would, under similar circumstances, have turned to the right or to the left was a question for the jury, and not the court, to determine."

It is insisted that the circumstances testified to by the appellant in this case show contributory negligence as a matter of law, and the argument is that he precluded himself from seeing the open cellar way by carrying his umbrella in front of him in the manner described; that it is the duty of pedestrians upon sidewalks to keep their eyes open and notice where they are stepping; that when they fail to do this they cannot recover for any injury sustained by reason of any defect in the sidewalks; and that, the facts being undisputed, no error was committed by the court in granting the motion for non-suit. But it must be borne in mind that it is not sufficient to justify the court in taking the case from the jury that the facts be undisputed, but it must also appear that there is no room for a difference of opinion as to the inferences and conclusions to be drawn from admitted facts. Once it is understood by a juror that sidewalks are made for the use and

travel of pedestrians, and that the pedestrian has a right
to assume that the city has done its duty in so maintaining
such sidewalk, it might not be illogical for such juror to
draw the inference that no contributory negligence was
proven by the testimony in this case. It is a matter of
common observation and experience that, during storms
and squalls of wind, it is frequently impossible for a per-
son to protect himself without carrying an umbrella in
front of him to such an extent that it would greatly impair
his vision, and it seems to us that reasonable men might
reasonably differ in reaching a conclusion in this case as to
whether or not the appellant was guilty of contributory
negligence. It is not the duty of the pedestrian on a side-
walk to bear constantly in mind dangers which may beset
him by reason of an imperfect walk. If the rule contended
for by the respondent should be enforced, one would not
dare to turn his head to the right or to the left in travel-
ing a street, but he would be compelled constantly to no-
tice the sidewalk in front of him. Some people are nat-
urally alert and observant of material things, notice every-
thing that is in sight, not necessarily as a matter of cau-
tion or prudence, but frequently from curiosity. Others
are more meditative as they move around, abstracted in
thought, unobservant of their material surroundings, and
absorbed frequently in the contemplation of business,
pleasure, or mental problems of various kinds. The great
majority of people are at least at times so abstracted, and
shall we say that only the most alert and observant are to
be protected from pitfalls on a public highway? Not so.
The great rank and file of thoughtful, contemplative peo-
ple have a right to rely upon the duty of the city author-
ities to keep the sidewalks upon which they are invited to
travel in a safe condition for travel, and the burden of
mental strain and watching to avoid pitfalls where no pit-

falls should be is not imposed upon them by the law, at least to such an extent that they are to be deprived of the right of submitting the reasonableness of their actions to the consideration of a jury of their peers.  One has a right to travel upon the street on the darkest night without a lantern, relying upon the performance of their duties by the authorities in keeping the streets in a suitable condition for travel.  Certainly it does not follow that if, from a stress of weather, a person, to defend himself from torrents of rain, carries his umbrella in the only position in which he can carry it,—which is the fact shown in this case,—it can be said he has committed negligence *per se.*

On the question of the right of the court to take the case from the jury, it appeared in *Van Praag v. Gale,* 107 Cal. 438 (40 Pac. 555), that plaintiff and defendant had occupied adjoining stores for a number of years, and that in front of defendant's store there was a trapdoor in the sidewalk for the use of the defendant and his tenants, which was opened when ingress to the basement was necessary, and with the use of which plaintiff was familiar.  On the day of the accident plaintiff was called to a jeweler's store on the other side of defendant's store, and when he passed defendant's store the trapdoor was closed.  On returning he fell into the trapdoor, it having been opened to allow the ashman, whose cart was in front of defendant's door, to go into the basement.  Plaintiff had seen the ashman drive up, but had not seen the trapdoor opened.  It was held that whether plaintiff was negligent was for the jury.  In the course of its opinion the court quoted approvingly from Judge COOLEY's opinion in *Detroit & M. R. R. Co. v. Van Steinburg,* 17 Mich. 99, where that eminent jurist said:

"The case, however, must be a very clear one, which would justify the court in taking upon itself this respon-

sibility. For, when the judge decides that a want of due care is not shown, he necessarily fixed in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon his opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence a definite rule of law. It is quite possible that, if the same question of prudence were submitted to a jury, collected from the different occupations of society and perhaps better competent to judge of the common opinion, he might find them differing with him as to the ordinary standard of proper care. The next judge, trying a similar case, may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first has ruled to be one of law. Indeed, I think the cases are not so numerous as has been sometimes supposed in which a judge could feel at liberty to take the question of the plaintiff's negligence away from the jury. That contributory negligence is matter of law is plainly the exception and not the rule."

The court in the case just cited, in commenting upon this question, said:

"But it by no means follows that the facts are admitted because there is no conflict in the testimony. Negligence is not ordinarily proven by direct and positive testimony, and is not so proven in this case. What the plaintiff did is established without dispute and beyond cavil. But whether from this conduct the deduction is inevitable, that he did not exercise the precautions for his own safety, which a reasonable man would have done under precisely the same circumstances, is not so clear. That this is the ultimate fact to be determined must be conceded. . . . To some minds probably, the conclusion would seem irresistible that he who, with eyes to see in broad daylight, walks into an open trapdoor in the sidewalk is lacking in that care and caution which characterizes the man of ordinary prudence. Others may well reason that plaintiff was entitled to a safe passage over a walk prepared by the pub-

lic for the accommodation of all its citizens. That he was interested and absorbed in the business in hand was in line with observed facts among men of ordinary caution in similar cases. That he should, in aid of his mental process, refer to the figures which he had probably just jotted down, and in so doing fail to see that a passageway, which but a few minutes before he had found safe and free from obstruction, had been turned into a yawning chasm, only evinces a *lapsus* to which the most thoughtful and prudent men are subject."

And so it may be said in this case. The testimony of the plaintiff was to the effect that he was a saloon keeper; that the bank, on the day on which the accident happened, closed at 12 o'clock, and that he was hurrying to the bank to make the daily deposit before the bank closed. It may well be concluded that his mind was engrossed with the importance of his errand, which, coupled with the storm and the necessity of protecting himself from the rain by his umbrella, might lead a reasonable man to conclude that he was rightly upon the street in the rightful pursuit of his business, and had a right to suppose that the street would be maintained in a way which would permit him to safely traverse it.

In *Barry v. Terkildsen,* 72 Cal. 254 (13 Pac. 657, 1 Am. St. Rep. 55),—a case where plaintiff was injured by falling into a trapdoor which was at the time of the accident open and unguarded,—the plaintiff's house was but a few feet from the hole, and at the time of the accident she was hurrying to school, and, her attention being diverted for a moment, she did not notice the hole, and fell into it. The court, in commenting upon the proposition urged, that she was guilty of contributory negligence, said:

"In our opinion, there is nothing in the point that respondent was guilty of contributory negligence. A side-

walk of a street in a city not near a crossing may be taken by one passing over it to be a safe, and not a dangerous place. In this case the respondent had a right to presume that the sidewalk was in the same condition in which she had always found it; and the fact that her attention was momentarily attracted in another direction—a thing of the most common occurrence to travelers along a street—falls far short of that contributory negligence which in law defeats an action for damages."

It was held in *Jennings v. Van Schaick*, 108 N. Y. 530 (15 N. E. 424, 2 Am. St. Rep. 459), where the plaintiff fell into an open coal hole left uncovered and unguarded in a crowded city street, that she had a right to assume the safety of the sidewalk, and so was not called upon to give attention to her steps until in some manner warned of danger.

"Undoubtedly," said the court, "she knew that vaults and coal-chutes were common under and adjoining the sidewalks, and that through the ordinary openings coal was deposited in such vaults. But she had a right to assume that they were securely covered, or if left open, were guarded by some one to give warning, or by the crib or box prescribed by the city ordinance."

It would be very hard to distinguish this case from the case under consideration. The appellant here incapacitated himself from seeing the opening in the sidewalk by placing an umbrella over his head for a legitimate purpose; in the case cited the plaintiff incapacitated herself by directing her attention off in another direction from the sidewalk; both relying upon the assumption that the walk was kept in a safe condition.

In *Clifford v. Dam*, 81 N. Y. 52, which was a case where the plaintiff fell through an opening in the sidewalk, it was held that it was not even necessary to prove negligence on the part of defendant, nor, in the first instance, want

of contributory negligence on the part of the plaintiff; that the action was not based upon negligence, but a wrongful act, and all that was necessary for plaintiff to prove to make out a cause of action was the existence of the hole, defendant's responsibility therefor, and' that in passing plaintiff fell into it. It is not necessary to go so far as this to sustain the right of recovery in this case.

In *Turner v. Newburgh,* 109 N. Y. 301 (16 N. E. 344, 4 Am. St. Rep. 453), it is said that municipal governments owe to the public the specific, clear, and legal duty of putting and maintaining the public highways which are in their care, or under their management, in a good, safe, and secure condition; that the duty of the city to keep its streets in a safe condition for public travel is absolute, and it is bound to exercise reasonable diligence and care to accomplish that end; that the city cannot claim legal exemption from liability by reason of its having contracted out the construction of the work. In *Topeka Water Co. v. Whiting,* 58 Kan. 639 (50 Pac. 877, 39 L. R. A. 90), a case where two sisters were driving and were injured by the horses being frightened at a hydrant, where the main was being flushed,—the court said:

"It is true that the open hydrant was within range of their vision if their attention had been called to it, and it was discernible before it was discovered by them. They were not, however, required to keep their eyes upon the pavement continuously for obstructions and pitfalls. It was a street which was in constant use, and over which they had passed almost daily without encountering such a danger. While they must still act with reasonable care, they had a right to presume, and to act on the presumption, that the street was reasonably safe for ordinary travel."

And in conclusion the court said:

"Whether she and her sister were in the exercise of ordinary care was fairly a question for the jury, and their finding in her favor is conclusive."

In *Barstow v. Berlin*, 34 Wis. 357, which was a case, as is this one, where the court below nonsuited the plaintiff, who. had fallen into a hatchway which was unguarded in the. sidewalk, the cause was reversed, the appellate court saying:

"Plaintiff swears that his attention was directed at the moment to the team and wagon across the way, so that he did not see the opening he was. approaching. Under such circumstances, no inference of negligence can be drawn from his conduct."

This goes further than the rule contended for, that the question of negligence should be submitted to the jury.

*Davenport v. Ruckman*, 37 N. Y. 568, is another case where it was contended that the plaintiff was guilty of contributory negligence by reason of her going on to the street when her eye-sight was impaired to such an extent that she could not see an excavation in the sidewalk. The judgment for the plaintiff was sustained by the appellate court of New York, the court saying:

"Whether it was so improper and imprudent for Miss Davenport to have gone into the street unattended, in her then condition of sight, that it would be negligence upon her part to do so, sufficient to prevent her from recovering compensation for an injury she might sustain from the negligence of others, while traveling or passing along the streets," is "the precise question to. be determined by the jury, and I think should have been submitted as a question of fact, and that it was fairly submitted in the above proposition. The streets and sidewalks are for the benefit of. all conditions of people, and all have the right, in using them, to assume that they are in good condition, and to regulate their conduct upon that assumption. A person may walk or drive in the darkness of the night, relying upon the belief that the corporation has performed its duty and that the street or the walk is in a safe condition. He walks by a faith justified by law, and if his faith is

unfounded and he suffers an injury, the party in fault must respond in damages."

In *Carter v. Village of Nunda,* 66 N. Y. Supp. 1059, it was held that a blind person had a right to travel the sidewalks assuming the safe condition of same, or at least that it was a question for the jury to determine whether he was guilty of contributory negligence in so going upon the sidewalk. In *Lortz v. New York Central, etc., R. R. Co.,* 40 N. Y. Supp. 253, is was held that whether a person, whose sight was impaired so that he could not detect the smoke of an engine which obscured the view of the track, had committed contributory negligence in going upon the track was a question for the jury; citing *McNamara v. New York Central, etc., R. R. Co.,* 136 N. Y. 650 (32 N. E. 765), where the lower court was reversed for holding that when one goes upon a railroad crossing while the smoke of a passing train still obscures her vision so that she cannot see a passing train, she is guilty of negligence *per se,* the appellate court saying that this was a question for the jury; citing many cases to sustain the general doctrine that a public highway is liable to use and may be of right used in the darkest night,—a night so dark that the keenest and clearest vision would not be able to detect obstructions and defects. In *Railroad Co. v. Stout,* 17 Wall. 657, this subject is discussed by the supreme court, and the court, in speaking of contributory negligence *per se,* says:

"This is true in that class of cases where the existence of such facts comes in question rather than where deductions or inferences are to be made from the facts;"

citing some cases where it has been well established by law that certain things are negligence *per se,*—as the case where a sane man voluntarily throws himself in contact with a passing engine; "there being nothing," said the

court, "to counteract the effect of this action, it may be
ruled as a matter of law that the injury to him resulted
from his own fault, and that no action can be sustained
by him or his representatives." But it is said that where
one sensible and impartial man would infer that proper
care had not been used, and that negligence existed,
another man, equally sensible and equally impartial,
would infer that proper care had been used, and that
there was no negligence; that it was that class of cases
and those akin to it that the law commits to the decision
of a jury.

"Twelve men," says the court, "of the average of the
community, comprising men of education and men of
little education, men of learning and men whose learning
consists only in what they have themselves seen and
heard, the merchant, the mechanic, the farmer, the labor-
er; these sit together, consult, apply their separate ex-
perience of the affairs of life to the facts proven, and
draw a unanimous conclusion. This average judgment
thus given it is the great effort of the law to obtain.
It is assumed that twelve men know more of the com-
mon affairs of life than does one man, that they can draw
wiser and safer conclusions from admitted facts thus oc-
curring than can a single judge"—citing many cases to
sustain the doctrine that, when the facts are disputed, or
when they are not disputed, when different minds might
honestly draw different conclusions from them, the case
must be left to the jury for their determination.

The same rule has been so frequently announced by
this court that it has become the established law of the
state as well as the law of the land. In *Smith v. Union
Trunk Line,* 18 Wash. 351 (51 Pac. 400, 45 L. R. A.
169), where it was shown that the passenger in alighting
from a cable car on a street crossing attempted to cross
in front of another car approaching from the opposite
direction on a close and parallel track, without stopping

to look or listen, such action was held to be not negligence *per se,* but was a question for the jury, and not one of law for the court. It is also said in that case:

"  .  .  . the rules of care which are required of pedestrians in crossing street car tracks are laws which are made to govern not the brightest or the most alert minds, but the ordinary mind; and the ordinary mind is often apt to be distracted with other thoughts, than that of danger in crossing car tracks on the streets.  .  .  . the law must look at human minds just as they exist, with all their frailties, their inclination to abstract thought and absentmindedness."

Surely if this rule is to be applied to people who are crossing street car tracks, where the track itself is more or less a suggestion of impending danger, one will not be held to a higher degree of watchfulness who travels upon a sidewalk sustained by the assumption that such sidewalk will be kept in a safe condition.

In *Vasele v. Grant Street Electric Ry. Co.,* 16 Wash. 602 (48 Pac. 249), where it was charged that the plaintiff was negligent in attempting to board a train in a dangerous place, the court said:

"The question then is, was the appellant, in attempting to reach the car, himself guilty, under the circumstances, of such negligence as to preclude a recovery in this action? Or, in other words, was he, as matter of law, contributorily negligent? It is the established law of this state that contributory negligence is matter of defense and must be alleged and proved by the defendant and need not be negatived by the plaintiff in his complaint, and that it is a question for the jury, and not the court, to determine, unless from the established facts but one conclusion can be rationally drawn by different minds. If there is room for a difference of opinion between reasonable men as to the inferences which may be fairly and reasonably drawn from established or conceded facts, the question of negligence is one of fact and not of law."

In applying the rule to the circumstances of that case, it was held that the question of negligence was one for the jury.

In *Cowie v. Seattle,* 22 Wash. 659 (62 Pac. 121) where plaintiff on his way home from "down town," stumbled against and fell into an incline and was injured, and where he admitted that he knew of the obstruction upon the sidewalk which caused him to fall, and frankly testified that he was not thinking of it at the time he came in contact with it, it was held by this court that the question of contributory negligence was one for the jury; that it was for the jury, and not the court, to determine what effect appellant's forgetfulness should have in the consideration of the question of his negligence. In *McQuillan v. Seattle,* 10 Wash. 464 (38 Pac. 1119, 45 Am. St. Rep. 799), where the plaintiff was injured through a defect in a sidewalk, and where the court, at the close of plaintiff's evidence, granted a non-suit, this court reversed the judgment of the lower court upon the proposition that the question of contributory negligence was for the jury to determine from all the facts and circumstances of the particular case, stating that it was only in rare cases the court was justified in withdrawing it from the jury; citing many cases. In fact, so overwhelming and universal is the authority on this question that we have no hesitancy in saying that the circumstances testified to by the plaintiff in this case constituted a group of facts which it was the special prerogative of the jury to pass upon in the determination of the question whether or not they constituted contributory negligence.

The case will therefore be reversed, with instructions to overrule the motion for a non-suit.

REAVIS, C. J. and ANDERS, FULLERTON, WHITE, MOUNT, and HADLEY, JJ., concur.