[No. 21254. Department One. January 3, 1929.]

JAKE FICHTENBERG et al., Respondents, v. LINCOLN COUNTY, Appellant.[1]

[1]Reported in 273 Pac. 178.

460

*Joseph H. Johnston* and *W. W. Zent,* for appellant.
*Pettijohn & McCallum,* for respondents.

MITCHELL, J.—Jake Fichtenberg and his wife brought this action against Lincoln county, to recover damages sustained upon their automobile going into an opening in a county road, caused by the removal by the county of the floor or covering over a narrow stockway. The county has appealed from a judgment on a verdict in favor of the plaintiffs.

Much of the evidence was not conflicting, as follows: The respondents were familiar with the roadway, which at the scene of the accident ran north, down hill, the way respondents were traveling. The total length of the hill was about eight hundred feet. The floor or covering of the stockway, or bridge, as it was called, was about five hundred and fifty feet from the top of the hill, the average grade of that portion of the hill being ten per cent, a part of it being thirteen and one-half per cent. The grade of the road north of the bridge was not so great.

The roadway was on a fill commencing near the top of the hill, the fill being about nine feet high at the bridge, and the surface of the road as it had been for some time was that the surface of the bridge was in a depression, the lower or farther side of the bridge, as respondents were driving, being eight inches below the general line of the surface of the road at that point. Running with the roadway and across each end of the bridge, there had been a two-by-four piece of timber, and from each corner of the bridge one or more boards flared off down the grade to a fence.

On the day of the accident, the road foreman, with help, was engaged in removing the stockway altogether and filling it to the proper surface of the roadway. By one o'clock they had taken away the bridge, the two-by-four railings and a part or all of the boards extending down the grade to the fences. About that time the respondents drove down the hill. Their automobile ran into the hole across the roadway, causing the injuries complained of. There had been rain the day before, a freeze at night and a softening of the road during the day, causing it to be slippery. There was no barrier, flag, or signal of danger of any kind on or across the roadway.

Other than the foregoing facts, the evidence was conflicting. That on the part of the appellant was to the effect that the road foreman, observing respondents' car near the top of the hill, got into the roadway on the same side of the open stockway, advanced rapidly up the hill towards their approaching car, frantically waving a spade held in his hands and shouting to the respondents to stop; that the respondents continued their speed of thirty to thirty-five miles an hour; that he had to step out of their way as their automobile came on and that finally respondents applied brakes

to their car, but too late, the car skidding sixty feet into the open ditch.

On the contrary, the evidence on behalf of the respondents was that their speed down the hill never exceeded fifteen to twenty miles an hour; that they saw no one until within one hundred and fifty feet of the hole, when they observed a team to their left below the grade, and about the same time saw the road foreman climbing up the grade to the roadway at a point beyond the hole, then start towards them waving his empty hands; that they reduced the speed of the car somewhat; that the foreman yelled to them to stop; that, immediately and at the same time, noticing the hole, respondent applied all his brakes, but the car skidded thirty or forty feet into the hole, at which time the road foreman was still on the other or south side of the hole, and that no other person made any attempt whatever to save them from danger.

Under these facts, that is, those not disputed, together with respondents' version of those in dispute, and particularly in view of the circumstances that the bridge, as it had been used and was known to the respondents, was in a depression deeper at the farther side from the respondents, and the tardiness of any attempt on the part of the county to give a warning, which attempt as made may have been somewhat confusing and distracting at first, the case was, in our opinion, one for the jury on the question of contributory negligence on the part of the respondents, and appellant's several motions raising or presenting that question to the court, as a matter of law, were properly denied.

Appellant contends that instructions numbered 7 and 10 were inconsistent, and that number 7 makes the county liable in any event. We do not so understand it. Number 7 is the usual instruction that the

county is required to keep its highways in a reasonably safe condition for travel and that failure to do so would constitute negligence—not that it would make the county liable in any event, as argued by the appellant. Instruction number 10 repeats the same rule, but adds to it the statement that the county is not an insurer of the safety of those who travel upon its public highways. There is nothing inconsistent in the two instructions.

The argument that, in defining or speaking of the degree of care the respondents were required to exercise, the court should have used the word "reasonable," rather than "ordinary," is without merit in our opinion. The matter of the choice of words was with the trial court.

In instruction number 13 the jury was told that a county that has torn up a public road, for the purpose of removing a stock chute or culvert, is chargeable with a reasonable degree of care to use safeguards to prevent travelers from going into "pitfalls and places of hidden danger." Similar language was used in instruction number 14. Counsel object to the words quoted, claiming they were comments on the evidence. But the language was not a comment on the facts. As used by the court, the words were employed in stating the law applicable to a condition actually existing, as testified to and described by both sides, and that no one disputed.

It is also assigned as error that the court, in instruction number 15, spoke of the liability of a county if it failed to exercise reasonable care and diligence in keeping its highways in reasonably safe condition for travel, the argument being that the instruction makes the county liable without any reference to the contributory negligence of the respondent.

It is another case of picking out a single instruction

for the purpose of criticism. In other instructions the jury had been fully advised on the subject of contributory negligence and the effect of it, if found by a fair preponderance of the evidence.

It is well settled that instructions, from the viewpoint of the jury, are to be considered altogether, or that each is to be considered in the light of all others; and in this case the jury was specifically told,

"These instructions are given by the court as a whole and are so to be considered by the jury. Each and every instruction is to be considered by you in connection with all the other instructions."

Instruction number 19 was as follows:

"If you find from a preponderance of the evidence in this case that the highway in question was being repaired, but had not been closed and was left open to public travel, you are instructed that it was still the duty of the county to see that the highway was kept in a condition reasonably safe and fit for travel. While a highway is undergoing repair, ordinary care must be taken to prevent injuries to travelers thereon and if ordinary care required the erection of fences, barriers, or the giving of other warnings to protect travelers from injury thereon and such fences or barriers were not erected, or other warnings were not given, then the county would be guilty of negligence."

Appellant predicates error upon the instruction, saying that the statement is preposterous, and that

"If a bridge has been removed, as is frequently done and must be done on public highways, this part of the highway is not safe and fit for travel and every man knows it is not."

The criticism or conclusion of counsel in this respect we think is not justified. What the jury was told and evidently understood, was, not that it was the duty of the county to keep the hole in the road, caused by the removal of a bridge, reasonably safe and fit for travel, but that

". . . it was still the duty of the county to see that the *highway* was kept in a condition reasonably safe and fit for travel."

How? As explained in the second part of the instruction, else the county would be guilty of negligence. Considered altogether, the instruction is supported by the authorities generally, a collection of which may be found in *Speck v. Township of Bruce,* 166 Mich. 550, 132 N. W. 114, 35 L. R. A. (N. S.) 203. There was nothing confusing or misleading in the instruction.

Affirmed.

FULLERTON, C. J., BEALS, and TOLMAN, JJ., concur.