[No. 26134.  *En Banc.*  November 2, 1936.]

MARY BENNETT, *as Administratrix, Respondent,* v. KING COUNTY, *Appellant.*[1]

[1] Reported in 61 P. (2d) 1316.

*Warren G. Magnuson, Patrick M. Tammany,* and *Charles C. Ralls,* for appellant.

*Frank R. Jeffrey, H. Sylvester Garvin,* and *Newell J. Banks,* for respondent.

HOLCOMB, J.—In November, 1933, Nicholas Walter Dimmick, generally called Walter, enlisted for six months in a Civilian Conservation Corps camp in the vicinity of Tolt. At that time and during all of the times mentioned in this action, his mother, Mary Bennett, lived at Kirkland, together with another brother, Clarence Dimmick, then unmarried, and a ten-year old sister, Helen Bennett.

On Friday, December 8, 1933, Walter left the C. C. C. camp for a week-end visit with his mother at Kirkland. Traveling by auto, with a sergeant from his camp, they passed over the road and bridge, which later was the scene of the catastrophe to Walter, between seven and eight o'clock.

On Sunday evening, December 10, 1933, at about seven o'clock, Walter, his mother, his brother Clarence and his sister Helen, left Kirkland, in a car owned by Clarence, to return Walter to the C. C. C. camp near Tolt. On three previous occasions, after such visits, Clarence had driven over the same route. They arrived at the west end of the Snoqualmie bridge about eight o'clock. Clarence drove to the bridge at about twenty-five miles per hour, slowing down to twenty miles per hour across the bridge, because of the slippery condition caused by mist, at which speed he continued to the eastern wooden approach and onto the dirt fill approach until the car was stopped by water.

The west end of the bridge has a two hundred foot wooden approach on a 2.05 per cent grade. The steel center span is two hundred feet in length. The east end of the bridge has a wooden approach approximately two hundred feet in length, ending in a gravel and dirt fill approach extending out some two hundred feet beyond the wooden approach where the road levels off. Both the dirt fill approach and the wooden approach on the east end of the bridge are on a five per cent grade.

Due to heavy rains and extraordinary and unusual weather, a general flood condition prevailed not only in the vicinity of the Snoqualmie bridge, but throughout the Snoqualmie and Tolt valleys and practically all of King county, both of these rivers having left their banks. The thirty foot graveled county road leading to the bridge had no lights nor warning sign at the west end of the bridge or at the west edge of the flood. Late Saturday afternon, December 9th, the waters began to rise over the road east of the Snoqualmie bridge. That evening, appellant's road foreman placed a warning light east of the rising waters, and on Sunday, when he again saw the road extending east from the Snoqualmie bridge, it was impassable. He said that, if he had placed a light at the west end of the bridge, he would have had to travel a distance of thirty miles, which he did not do for the reason that there were other places of more obvious danger on roads of heavier travel, requiring the full time of himself and his available crew.

It will be noted that it is a disputed question of fact whether there were any lights visible on either side of the bridge. It is admitted that there were none on the west end of the bridge or the west edge of the flood.

Clarence testified that no lights were visible on either side, and a disinterested witness testified that

no lights were visible shortly after the catastrophe. Clarence also testified that there was no warning or barricade in the road, or any signal lights, or anything of the kind at any point, and that he kept a close watch for danger signs. Considering that he had his mother and young sister with him, it is very probable that he would keep a very close watch for danger signs.

A King county deputy sheriff also testified that, when he drove over the bridge shortly after the catastrophe, he could see for a short distance, and the water looked just like the road.

Respondent sued to recover for the loss of support occasioned by the drowning of her son Walter.

As ground of negligence on the part of the county, she charged failure to provide any means whatsoever of caring for excess water and failure to provide proper safeguards for travelers over the highway and particularly the deceased; and failure to place any lights, signs or other signals of warning upon the highway to warn travelers of the dangerous condition due to the floods, and particularly failure to warn the deceased.

For answer, appellant traversed the material allegations of the complaint and pleaded four affirmative defenses: (1) The contributory negligence of Walter Dimmick himself; (2) negligence and want of care of respondent proximately resulting in the accident complained of; (3) that all occupants of the automobile were engaged in a common enterprise, or joint venture, carrying out a common family purpose; that Clarence Dimmick, the brother driver, was the duly constituted agent of the joint enterprise; that he was guilty of negligence contributing to and proximately causing the accident complained of; and since this negligence was imputable to both respondent and the deceased, recovery was barred; and (4) by a trial amend-

ment, an affirmative defense was pleaded that the accident was due to unusual and unprecedented conditions of the highway at the time and place alleged, creating a condition which was an act of God over which the county had no control and in the exercise of ordinary care could not foresee or guard against.

In an instruction, the trial court, in effect, submitted to the jury the act of God defense, but refused to submit the first three of appellant's affirmative defenses, including any instruction on contributory negligence or joint venture. The jury returned a verdict for $5,500.

On October 31, 1935, the trial court denied appellant's motion for judgment n. o. v. and orally granted the alternative motion for a new trial, of which the clerk made only a minute entry. On November 16, 1935, the trial court reconsidered its motion granting a new trial and imposed terms to the effect that the motion for a new trial would be granted unless respondent filed written consent to a reduction of the verdict to the sum of three thousand dollars. Written consent was so filed, and judgment on the verdict in the sum of three thousand dollars was entered against appellant. This procedure was justified, contrary to a contention of appellant, under Rem. Rev. Stat., § 431 [P. C. § 8081], and our decisions in *Chaffee v. Hawkins,* 89 Wash. 130, 154 Pac. 143, 157 Pac. 35, and *Parker v. Parker,* 116 Wash. 315, 199 Pac. 723.

This appeal results.

Twenty-three errors are assigned by appellant, but they are argued under six heads. It will be unnecessary to discuss all of them under our view of the law of the case.

Disposing of some matters first which we consider primary, the first affirmative defense of contributory negligence on the part of Walter is based upon

the following facts: When they reached the bridge and ran into the water, Mrs. Bennett testified:

"That water was going right over the windshield like it was going right over the top of the car. . . . Of course, it frightened me very much. I said 'Let's get out of here';"

that Clarence got out on the left-hand side of the car and came back and she told him to take Helen out as she was the most helpless, and he did. Then Walter got out on the same side of the car that Clarence did and came up to the back of the car where she was sitting and said, "Come on, Mother, I will take you out;" that she stepped out into the road and he picked her up in his arms; that she said, "You can't carry me, son. Let me walk and take your hand," and he said, "Mother I will carry you to shore;" that just like a flash he was taken off of his feet over the bank of that road; and that when he went over the edge of the road he let go of her and she didn't see him any more, nor have they found his body.

The mother, when she was helped out of the car, according to the testimony of Clarence, was then standing waist deep in the swift current of the river. The natural thing for Walter to try to do was to carry his mother out, but he only weighed 127 pounds and could not accomplish his desire. Clarence reached the pair in time to put his hands on both, but was unable to hold Walter. He disappeared and, as the jury found, was drowned. Clarence succeeded in assisting his mother to the bridge and afterwards secured assistance for her and the little girl from a neighbor.

Those facts do not constitute contributory negligence on the part of Walter nor on the part of respondent, either in fact or law.

Nor do the facts that all of the occupants were going with Walter to the place where he worked, es-

tablish a common or joint venture. Neither Walter nor his mother, respondent here, had the slightest right to direct or control the conduct of Clarence in the driving of the car, which belonged entirely to Clarence.

"The great weight of authority is to the effect that to constitute a common or joint purpose within the rule as to imputed negligence there should be a joint interest or community of interest in the object or purposes of the undertaking and an equal right to direct and govern the movements and conduct of each other in respect thereto. Each must have some voice and right to be heard in its control and management, and the mere fact that two persons are doing something together does not make each chargeable with the negligence of the other, nor does the fact that they have certain plans in common." 45 C. J. 1020.

There is no similarity between this case and one where two boys were engaged in a joint enterprise in covering a newspaper route which belonged to one of them, but in which he was sometimes assisted by the other, both riding the same bicycle, as in *Masterson v. Leonard,* 116 Wash. 551, 200 Pac. 320; or where a brother and sister were using a car with their father's permission in a common venture, the negligence of the one driving being imputed to the other, as in *Hurley v. Spokane,* 126 Wash. 213, 217 Pac. 1004.

The facts in the other cases relied upon by appellant, *Shirley v. American Automobile Ins. Co.,* 163 Wash. 136, 300 Pac. 155; *White v. Stanley,* 169 Wash. 342, 13 P. (2d) 457, and *Hart v. Hogan,* 173 Wash. 598, 24 P. (2d) 99, were utterly distinguishable from this case.

There was in this case no joint venture or common enterprise.

Counsel repeatedly asserts that the trial court placed the county in the position of an insurer by its instructions. We do not agree with this assertion.

The trial court instructed the jury, in harmony with our cases, that the county *was not an insurer of the safety of the highways,* but was liable only in case the county, or its officers or agents, had some knowledge of the conditions existing at the time and place in question and failed to take such steps as would be necessary to warn travelers upon the highway of the dangerous condition, or to erect such barriers as would prevent travelers upon the highway who were not advised of such dangerous condition from suffering injury thereby.

He also charged the jury that the operator of a vehicle upon the public highways is not obliged to examine every part of the highway before attempting to pass over it, and such operator has the right to assume that such highway is in its normal condition and reasonably safe for travel until by the exercise of ordinary care he discovers a contrary condition.

Another instruction reads:

"While I have instructed you that the law imposes upon the county having charge of the highway the duty of keeping such highway in a reasonably safe condition for ordinary travel, yet the law does not make the county an insurer of the safety of such highway. The county officers are not required to anticipate unforeseen or unusual occurrences, such as an unusual flood. So, you must determine whether or not the condition in the highway of which the plaintiff complains was one which ordinary prudence would not have anticipated or guarded against. If ordinary, human prudence and caution would not have anticipated and guarded against the condition at the time and place in question, then failure to guard against such condition would not be negligence on the part of the county."

The foregoing instructions strictly comply with the law as declared by this court in *Fichtenberg v. Lincoln*

*County,* 150 Wash. 459, 273 Pac. 178, and *Mischke v. Seattle,* 26 Wash. 616, 67 Pac. 357. We approved a pronouncement in *Davenport v. Ruckman,* 37 N. Y. 568, in the *Mischke* case, *supra,* saying:

"A person may walk or drive in the darkness of the night, relying upon the belief that the corporation has performed its duty and that the street or the walk is in a safe condition. He walks by a faith justified by law, and if his faith is unfounded and he suffers an injury, the party in fault must respond in damages."

Other errors and contentions of appellant have been examined and found without merit.

Respondent also contends that the verdict of the jury for $5,500 should be reinstated under our new act, Rem. Rev. Stat., § 464 (incorrectly cited). The correct citation is Rem. Rev. Stat. (Sup.), § 399-1 [P. C. § 8225-1]. Under that section, it is provided:

". . . if such party shall file such consent and the opposite party shall thereafter appeal from the judgment entered, the party who shall have filed such consent shall not be bound thereby, but upon such appeal the supreme court shall, without the necessity of a formal cross-appeal, review de novo the action of the trial court in requiring such reduction or increase, and there shall be a presumption that the amount of damages awarded by the verdict of the jury was correct and such amount shall prevail, unless the supreme court shall find from the record that the damages awarded in such verdict by the jury were so excessive or so inadequate as unmistakably to indicate that the amount of the verdict must have been the result of passion or prejudice."

Neither of the cases cited by respondent bears pertinently upon the quoted portion of the above act, which has not been construed by us.

*Brammer v. Lappenbusch,* 176 Wash. 625, 30 P. (2d) 947, was a case where the trial judge erroneously as-

sumed that the new act deprived the trial court of any discretion in the matter. We reaffirmed that decision in *Hatcher v. Globe Union Mfg. Co.*, 178 Wash. 411, 35 P. (2d) 32.

In the case before us, the trial court exercised its discretion under the issues and facts before it, and we cannot now perceive, from the record before us, that the trial court abused its discretion.

The judgment, as reduced and consented to in the sum of three thousand dollars, is accordingly affirmed.

MILLARD, C. J., BLAKE, MITCHELL, and STEINERT, JJ., concur.

BEALS, J. (dissenting)—The record in this case shows beyond question that, at the time of the accident, a most unusual and extraordinary flood condition existed throughout practically all of King county. Rivers and streams were overflowing their banks in all directions, and those representing the county in charge of highways could do practically nothing to keep the roads open and very little by way of warning the traveling public. The floods arose suddenly and carried their own warnings of danger.

In my opinion, the flood conditions were entirely beyond the control of the county authorities and constituted a public calamity and danger, for results of which, at least under the circumstances shown by the case at bar, the county cannot be held responsible. I find in the record no evidence which, in my opinion, justifies a finding that the officers of the county were guilty of any negligence which renders the county liable to respondent.

Passing this question, I am also of the opinion that, under the evidence, the court should have submitted to the jury the question of contributory negligence.

206

For these reasons, I dissent from the conclusion reached by the majority.

MAIN, TOLMAN, and GERAGHTY, JJ., concur with BEALS, J.