[No. 34397. *En Banc.* March 5, 1959.]

CHARLES T. McDONALD, *Appellant,* v. SPOKANE COUNTY, *Respondent.*[1]

FINLEY, ROSELLINI, and FOSTER, JJ., dissent.

*Graves, Kiser & Gaiser,* and *Paul H. Graves,* for appellant.

*Del Cary Smith & Del Cary Smith, Jr., John J. Lally,* and *John P. Tracy, Jr.,* for respondent.

MALLERY, J.—The plaintiff and his companion were injured on January 4, 1956, while driving his car toward his farm on the Wild Rose road in Spokane county, when they ran into a washout. Heavy and protracted rain had caused flood conditions in the county, which had engaged the full attention of the county road crews. Huston creek, in particular, was swollen and, for some highly controverted cause, had produced a washout in the road where it crosses a gulch or ravine.

[1]Reported in 336 P. (2d) 127.

From a judgment based on the verdict of a jury, the plaintiff appeals.

Appellant assigns error to the refusal of the trial court to give three of his requested instructions. They were to the effect that (1) the county has a duty to use reasonable care to see that the fill used in the road and the number and size of the culverts used therein are adequate to handle the runoffs of surface water, which might reasonably be foreseen; (2) if the county's agents became aware that the original construction was inadequate, the county had a duty to rectify it by either inserting additional culverts or strengthening the fill so as to render the road safe for travel; and (3) the agents of the county have the duty to keep themselves informed of dangerous conditions in regard to the road, and cannot say they did not have notice of such facts as a reasonably prudent man would have under the circumstances.

Regarding the duty of care imposed upon the respondent by law, the trial court gave the following stock instructions:

Instruction No. 20. "There is a positive and continuous duty upon the part of Spokane County to use ordinary and reasonable care at all times to keep the county roads reasonably safe for the public.

"This duty includes within it the obligation on the part of the defendant to use ordinary care in construction, maintenance and use of its roads, so as to make them safe for public use.

"Failure to perform this duty is negligence."

Instruction No. 22. "If you find from a preponderance of the evidence that agents or employees of the defendant Spokane County charged with the duty of repairing or erecting warning signs against the dangerous road conditions did, in fact, receive notice that a condition dangerous to the traveling public impended, it was their duty to eliminate the danger, either by repair or other protective measure, or by erecting warning signs or barricades, whichever was reasonably necessary in said exercise or ordinary care.

"Failure to take such steps as called for by the particular circumstances under the rule stated above would be negligence."

Instruction No. 23. "As you have learned from these instructions, the duty to repair, remove, or warn against a dangerous or defective condition in or on public property does not originate until the person or persons having authority to remedy the condition receive notice thereof. However, our law recognizes a substitute for actual notice, and we call it constructive notice. Actual notice consists of express information of a fact. But when a person does not receive such express information, if he does have actual notice of other circumstances sufficient to put a prudent man on inquiry as to the particular fact, and if by prosecuting such inquiry he would learn of such fact, he has constructive notice of the fact itself. The legal effect of that constructive notice is the same as if he had actual notice.

"If you should find from the evidence that there was a long, continued existence of the dangerous or defective condition which, plaintiff claims, caused him injury, that fact will support an inference that the person or persons having authority to remedy the condition had constructive notice thereof. However, it lies in the exercise of your discretion whether or not to draw that inference, upon weighing all the evidence, considering the cause and nature of the condition, whether it was conspicuous or not, whether it had received any public notice, the length of time it existed, the location of the road, the extent and nature of the use to which the road was put, the duty and practice of inspection, and other surrounding circumstances."

These general instructions adequately cover appellant's specific contentions and are a correct statement of the law, although they are not as pleasing to the appellant as the slanted instructions he had requested. Regarding this, the court said:

". . . It is the Court's further belief that the instructions should not present an argument to the jury on behalf of either side of the case, but simply the rules of law applicable, within which framework counsel may make their argument on their respective theories of the case, and it was in the belief that Instruction No. 20 was broad enough to include the specific duty referred to by counsel's proposed instruction that the specific instruction was not given."

With this statement, of course, the appellant does not agree.

■ It is appellant's position that inadequate drainage facilities, of which respondent had or should have had notice, caused the washout, and, because of the refusal to give his requested instructions, his theory of the case was not presented to the jury. More specifically, appellant contends the jury might have construed the words "dangerous condition", as used in the instruction, as referring only to the washout itself and not to danger of a washout resulting from inadequate drainage facilities, or, in other words, that the jury was not told that the county had a duty to maintain adequate drainage facilities. Reference to the instructions demonstrates the unsoundness of this contention. They instructed the jury that the county must construct and maintain the road in a safe condition. Expert witnesses testified on behalf of both parties as to what drainage facilities were necessary at this particular place to make the road safe from washouts. There was much testimony by lay witnesses as to the adequacy of the drainage facilities. All of this testimony was in sharp conflict and presented a fact question for the jury. The jury was adequately instructed upon respondent's duty in the matter of drainage.

The appellant assigns error to the trial court's instruction No. 21, which reads:

"While I have instructed you that the law imposes upon the county having charge of the highway the duty of keeping such highway in a reasonably safe condition for ordinary travel, yet the law does not make the county an insurer of the safety of such highway. *The county officers are not required to anticipate unforeseen or unusual occurrences, such as an unusual flood.* So, you must determine whether or not the condition in the highway of which the plaintiff complains was one which ordinary prudence would not have anticipated or guarded against. If ordinary, human prudence and caution would not have anticipated and guarded against the condition at the time and place in question, then failure to guard against such condition would not be negligence on the part of the county." (Italics ours.)

■ The assignment of error is particularly directed to the italicized portion of the instruction, and the appellant

contends that, although it is within the pleadings, there is no evidence to support the issue thus raised. The instruction is a correct statement of the law being expressly approved in *Bennett v. King County*, 188 Wash. 196, 61 P. (2d) 1316. Furthermore, appellant did not except to the giving of instruction No. 12-A, which reads:

"If you find from a preponderance of the evidence in this case that at the time in question a most unusual and extraordinary weather condition, causing an excessive runoff of accumulated snow, existed throughout Spokane County, and that because of such condition those representing the County in charge of highways could not, in the exercise of reasonable care, have foreseen, prevented, remedied or warned against the danger existing on the road in question, then the County was not guilty of negligence and your verdict should be for defendant."

Since this instruction was given without objection and was properly before the jury, no error can be predicated upon instruction No. 21, which is to the same effect.

Appellant contends the trial court should have granted his motion for judgment *non obstante veredicto* or, in the alternative, for a new trial. This is predicated on the theory that the evidence conclusively shows that respondent had actual or constructive notice of the impending danger and thus is liable for failing to take necessary steps to correct it or give adequate warning.

The evidence in the record would not support a ruling that respondent had notice *as a matter of law*. Hence, it was a question of fact for the jury, which apparently was resolved against the appellant.

The judgment is affirmed.

WEAVER, C. J., HILL, DONWORTH, OTT, and HUNTER, JJ., concur.

FINLEY, J. (dissenting)—In this case the appellant, Charles T. McDonald, contends: (1) That the county had not provided adequate drainage facilities (culverts) for Huston creek, with the result that the creek water washed out the road; (2) that, even if the drainage facilities were normally sufficient for the waters of Huston creek, the cul-

verts were so clogged with silt and debris as to be inadequate on the day of the accident, with the result that the creek water washed out the road; (3) that the county had actual notice of imminent danger to the road and failed to take any precautions to warn the traveling public.

The county, on the other hand, contends: (1) That the drainage facilities were adequate under circumstances which could be reasonably anticipated; (2) that unprecedented flood conditions prevailed on the day of the accident, such that reasonable caution would not have anticipated; *i.e.*, that the washout resulted from an Act of God; (3) that the county had no actual notice of imminent danger to the road; and (4) that McDonald was guilty of contributory negligence.

Upon the issues so framed, the case went to trial before a jury.

Since the decision in *Kirtley v. Spokane County* (1898), 20 Wash. 111, 54 Pac. 936, it has been clear in this state that counties, like other municipal corporations, are liable for damages resulting from their failure to use ordinary and reasonable care to keep county roads reasonably safe for the public. See *Boggess v. King County* (1929), 150 Wash. 578, 274 Pac. 188; *Berglund v. Spokane County* (1940), 4 Wn. (2d) 309, 103 P. (2d) 355, and cases cited therein.

In *Sigurdson v. Seattle* (1956), 48 Wn. (2d) 155, 292 P. (2d) 214, we recognized that there is

". . . no substantial difference between the function of improving and maintaining public streets and that of improving and maintaining drains . . . which are necessarily ancillary to the function of maintaining the streets."

In *Ronkosky v. Tacoma* (1912), 71 Wash. 148, 128 Pac. 2, we said:

"Where a street is improved across . . . [a] natural water course, it is incumbent upon the municipality not only to make an adequate bridge culvert, or passage for the water in the first instance, but to keep it in such condition that it shall not obstruct the stream thereafter. . . . [Citing cases.]

"Nor is this positive duty met by a provision merely ade-

quate to take care of the water of the stream, at its lowest or even at its ordinary stages. Proper regard must be had to the volume of water, the strength and rapidity. of the current at all seasons. While there is no liability for failure to provide against unprecedented floods, ordinary freshets must be anticipated. . . ."

See, also, *Dillabough v. Okanogan County* (1919), 105 Wash. 609, 178 Pac. 802; *Harkoff v. Whatcom County* (1952), 40 Wn. (2d) 147, 241 P. (2d) 932; *Cover v. Platte Valley Public Power & Irrigation District* (1956), 162 Neb. 146, 75 N. W. (2d) 661; and 18 McQuillin on Municipal Corporations (3d ed.), § 53.134, pp. 521-524. As to the size of the culverts which must be maintained, McQuillin states:

. "The culvert must be sufficient to accommodate, not only the natural and normal flow of the stream, for example, where the culvert is constructed over a natural watercourse, but such abnormal and excessive flow as may reasonably be anticipated in time of high water and flood. However, 'there is no duty to provide for floods so unusual and extraordinary as to bring them within the category of an "act of God." ' "

From the foregoing, it is clear that the county had a duty to maintain adequate drainage facilities. It is undisputed that the record contains substantial evidence to the effect that the drainage facilities actually provided were inadequate.

. The majority are persuaded that, since the trial judge gave a *general* instruction relative to the county's *duty to use reasonable care to keep the roads in a reasonably safe condition* for the traveling public, then appellant's theory of the case was adequately covered. This seems to me inconsistent with prior holdings of this court on this subject. For example, in *DeKoning v. Williams* (1955), 47 Wn. (2d) 139, 286 P. (2d) 694, Judge Ott, speaking for the court, said:

"In instructing the jury, the court covered appellant's theory by only a single general instruction. *Each party is entitled to have his theory of a case presented to the jury by proper instructions, if there is any evidence to support it, and this right is not affected by the fact that the law is covered in a general way by the instructions given. Allen v.*

*Hart,* 32 Wn. (2d) 173, 176, 201 P. (2d) 145 (1948), and case and text cited; *Adjustment Department, Olympia Credit Bureau v. Smedegard,* 40 Wn. (2d) 76, 78, 241 P. (2d) 203 (1952), and cases cited; *Billington v. Schaal,* 42 Wn. (2d) 878, 881, 259 P. (2d) 634 (1953)." (Italics mine.)

And the court went on to say:

"Although any one of appellant's proposed instructions Nos. 4, 5, and 6 would have called to the attention of the jury the application of the law to appellant's theory of the case, *we do not approve the precise wording used by the scrivener. Upon a retrial, the proposed instructions should be redrawn to more clearly and concisely present the law and appellant's theory of the case to the jury* following generally the rule announced in 1 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), 538, § 668, and 2 Restatement, Torts, 796, § 296." (Italics mine.)

It seems somewhat significant to me that the trial judge used the word *condition* at least seventeen times in the instructions to the jury—without ever clearly explaining or defining it. In and of itself, this would not be prejudicial or even erroneous under some circumstances; but in the case at bar I am convinced that the word was so used as to *most reasonably* convey the impression to the jury that the county was not liable to the plaintiff unless it had actual or constructive notice of the *hole in the road.* Even the trial judge placed this interpretation on the word *condition* in at least one place in his memorandum opinion denying a judgment notwithstanding the verdict or a new trial:

"Plaintiff has sued Spokane County for injuries and damages sustained by him in an auto accident *caused by a defective condition* of a Spokane County road. *This condition of the highway was caused by a high run-off of water following a chinook thaw and rain, and consisted either of a washout of a substantial portion of the road* and supporting fill, or simply of the fill, leaving the pavement suspended over it." (Italics mine.)

I believe the ambiguity of the word *condition,* when coupled with the lack of a more specific instruction on the county's duty to maintain adequate drainage facilities in the road, deprived the appellant of his right to have the jury

decide fairly whether or not the county was guilty of negligence.

I believe the judgment should be reversed, and a new trial granted; therefore, I dissent.

ROSELLINI and FOSTER, JJ., concur with FINLEY, J.