[No. 22783. Department Two. March 30, 1931.]

EARL HOPKINS *et al., Appellants,* v. LOTUS CAFE,
INCORPORATED, *Respondent.*[1]

*E. H. Kohlhase* and *Vanderveer, Beardslee & Bassett,* for appellants.

*Fisk & McCarthy,* for respondent.

TOLMAN, C. J.—This is an action for personal injuries, tried to a jury, which rendered a verdict in favor of the plaintiffs. A motion for a new trial and a motion for judgment *non obstante veredicto* were interposed. The trial court denied the motion for a new trial and granted the motion for judgment n. o. v., from which judgment the plaintiffs have appealed.

The respondent seems to urge that the action of the trial court is sustainable because there was no allegation in the complaint sufficient to invoke the rule of *res ipsa loquitur,* and that the special allegations of negligence were not sufficiently supported by the evidence to take the case to the jury. After careful study of the evidence, we find ourselves in agreement

[1]Reported in 297 Pac. 178.

494

with the trial court, who held that there was sufficient evidence offered to take the case to the jury on the special charges of negligence. It is therefore unnecessary to determine whether the pleadings were sufficient to invoke the rule of *res ipsa loquitur*.

The real ground of controversy, and that upon which the judgment was based, arises out of a written release, reciting as consideration the moneys already paid to the injured person for his treatment and cure, signed by the injured party. Respondent pleaded this release as a bar, and the appellants, in their reply, while admitting that something had been signed, in effect alleged that, if it was the paper pleaded, then its execution had been obtained by fraud and over-reaching, and that what was then represented as the consideration had not been paid.

The testimony rather clearly shows that, at the time the so-called release was executed, the appellant husband, who was the injured party, was unable to see or to read at all, by reason of the injuries to his eyes which he had sustained in the accident complained of. He testified, in effect, and was in substantial parts corroborated by the testimony of others, that, when the paper was presented by his employer for his signature, he said that he could not see or read it, and his employer then started to read the heading in legal phraseology. He then testified as follows:

"A. Well, he started out to read something on it, and he said, 'Well, it was just to show you won't sue me,' and I said, 'Well, I would not think of suing him, because you acted right with me.' He said, 'I did not think you would. This is to show doctor bills have been paid and that the place was going to be taken care of.' And he said, 'I want you to be sure and come back and I do not want you to feel like you are losing your position over this.' Q. Did he say how long he would take care of you? A. He said until I

was able to come back to work . . . Q. Tell all he said about the paper? A. He talked this all in the same tone, so it sounded like it was all from the paper as near as I could figure it. He never started to talk about anything else or asked questions, but just kept on talking."

And again, on cross-examination:

"Q. Under what conditions—the conditions set out in the release? A. Well, it was all the same. I did not know whether he was reading it or not, the way he talked it, it sounded like a paper all right. Q. That is what it sounded like to you? A. Yes. Q. Did you think at the time that he had put a writing in the paper that he would take care of the payments on your house? A. I did. Q. You thought that was in the paper, did you? A. Yes."

This, together with evidence that what appellants believed to be the main consideration specified in the paper had not been paid, was, we think, sufficient to carry the case to the jury, both as to whether the signature had been obtained by fraud, and also as to whether there had been an accord and satisfaction. *Joyner v. Seattle*, 144 Wash. 641, 258 Pac. 479.

Since it is our settled rule that a motion for judgment n. o. v. calls for the exercise of no discretion on the part of the court, and can only be granted when there is no evidence and no reasonable inference from evidence to go to the jury, it follows that the judgment must be reversed.

The motion for new trial having already been denied, a judgment on the verdict must follow.

FULLERTON, BEALS, MILLARD, and BEELER, JJ., concur.