[No. 25818. Department One. August 12, 1936.]

GEORGE GROVER SAUERS, *Respondent,* v. MUTUAL
BENEFIT HEALTH AND ACCIDENT ASSO-
CIATION, *Appellant.*[1]

*Kennedy & Schramm,* for appellant.

*Caldwell, Lycette & Diamond,* for respondent.

TOLMAN, J.—This is an action on an accident and
health insurance policy tried to a jury, resulting in
a verdict in favor of the plaintiff. From a judgment
on the verdict, the defendant has appealed.

[1]Reported in 60 P. (2d) 103.

Several of the errors assigned question the sufficiency of the evidence, hence it will be necessary to mention, as briefly as may be, the facts as indicated by substantial evidence upon which the verdict rests.

The respondent is a married man with children, and at the time of trial below was fifty-three years of age. He is not an educated man and had been employed as a driver of a laundry truck for many years, operating one of the large commercial routes in the city of Seattle and delivering heavy laundry bundles.

In the year 1919, respondent injured his left knee. A claim was filed with the state department of labor and industries, and he received compensation for five months loss of time and a permanent partial disability award amounting to five hundred dollars. Thereafter, he returned to his employment and performed the same heavy work without any difficulty except that he noticeably limped.

In 1926, a physician, representing the state department of industrial insurance, removed fluid from his left knee. On that occasion, he lost two months time and received state compensation therefor. Again he resumed his duties, and except for the obvious limp he apparently performed his work without difficulty and with efficiency.

Early in the year 1928, respondent suffered with a cold and cough. He went to see the physician for the laundry drivers and procured medicine for his cough, but was not under treatment then or at any time for tuberculosis.

Shortly prior to April 9, 1928, he was solicited by an agent of the appellant insurance company to take out a policy of accident and health insurance. Respondent advised the agent of the injury to his left knee, the resulting limp, and of the trouble with his knee and loss of time in the year 1926. The agent

rode with the respondent in his truck while he performed his usual duties, watched him at his work, and advised the respondent that he was an insurable risk.

The application for insurance was filled out entirely by the agent. The questions relating to the age, place of birth, height, weight, place of residence, name of his employer and the nature of his occupation, were all correctly answered. To the question "Are you sound physically and mentally," the answer "yes" was written. As to whether the applicant had had any one of a number of diseases, including tuberculosis, the answer was "no" as to each. The question "Have you received medical or surgical advice or treatment, or had any local or constitutional disease within the past five years" was answered "no," as also was the question as to whether the applicant had ever been operated on by a physician or surgeon. The applicant duly signed the application so filled out, which called for a policy paying one hundred dollars per month in case of total disability.

On April 10, 1928, the day following the signing of the application, respondent was advised by the doctor who had treated him for his cough that he had tuberculosis. Respondent then consulted another physician, who advised him to the same effect, but upon the trial, the only doctors who testified rather clearly indicated that, if respondent had ever had tuberculosis, he was but slightly affected, that the disease had been arrested and that it was impossible that the tuberculosis, if it ever existed, had any effect in producing the disability for which recovery was here had. There seems to be little or no dispute upon this point.

When the insurance policy was delivered, it was not the policy for which respondent had applied, but was one providing for the payment of two hundred dollars per month for total disability. Respondent at

once declined to accept this policy, informed the agent that he had tuberculosis, of which he had just been advised, and indicated a desire to have the policy returned to the company, but, according to his testimony, the agent prevailed upon him to accept the policy upon the assurance that the recent discovery that he was affected with tuberculosis would not void the policy.

In November, 1928, the respondent again injured the knee which had been originally injured in 1919. The company sent its adjuster, who investigated the claim and paid the respondent $463.33 for seventy-seven days of time loss under the policy then in force. Thereafter, and before another premium matured on the policy, respondent voluntarily requested that the policy be reduced to a maximum of one hundred dollars per month for total disability. He was told to wait until the end of the policy year and, accordingly, did, two days before the end of the first policy year, surrender that policy and make application for the policy which is involved in this suit.

A new application was made, which seems to have been copied verbatim from the preceding application. Respondent testified that the new application was prepared by appellant's district manager in Seattle without any information from him, none being sought, and that he simply signed the application as directed without knowing what it contained. Of course, the new application was obviously untrue and must have been known to be so by the appellant and its officers and agents, because only a month or so previously they had paid respondent the substantial sum of $463.33 for injury to his knee and had in their possession, of course, the proof concerning the injury upon which the payment was based.

After the delivery of the last policy, the respondent

had arthritis in his right leg, made claim for benefits under the policy, and was paid fifty dollars. In September, 1930, the respondent fell and accidentally injured his left knee, as the result of which he claims to have become totally disabled, though not immediately. He testified that he notified the appellant by letter of his accident and later made a claim for loss of time from May 1, 1931, when total disability developed. For some months, respondent was in the hospital, where an operation was performed on the injured knee, and later a second operation was performed on the knee.

During this period, appellant investigated the claim, asked and obtained information, at no time suggesting lack of proper notice, and finally rejected the claim, not on the ground of want of notice or false representations, but on the sole ground that the impairment of the knee was due to conditions arising long before the policy was issued. Correspondence and negotiations continued notwithstanding the rejection, until March 7, 1932, when an adjuster personally interviewed the respondent. Each testified on the trial, and each told a diametrically different story.

According to the respondent, the adjuster indicated that he had come to make payment for what had accrued under the policy and started to write him a check for nine hundred dollars. Respondent, objecting, said that nearly ten months had elapsed since he had become totally disabled, complained because he had not been paid each month, and insisted that he should have ten months payment or one thousand dollars at that time and payments at the rate of one hundred dollars per month in the future. He testified that the adjuster said the company did not deal on a monthly basis, but from time to time, as an adjuster might be able to complete his investigations,

payments would be made, and finally, after some demurring, the adjuster wrote and handed him a check for one thousand dollars and, thereafter and just before leaving, passed him a document represented to be a receipt, requesting him to sign it and to mail in his policy, which would be later returned to him.

Respondent testified that he had no reason to believe or suppose that the paper was other than a receipt or that he was being asked to sign a release; that, having mislaid his glasses, he could not read, and relying upon the representation of the adjuster, he signed the paper as a receipt. The paper, in fact, by its terms is a full release and acquittance of all right, title, claim, interest and demand accrued, or accruing, under the policy, and a discharge of the appellant from any and all liability thereunder. The check for one thousand dollars, which was thus delivered to the respondent, also contains words of the same import.

Checks given for previous claims paid to the respondent contained the same language of absolute release, and like releases were taken when previous payments were made. Indeed, there was evidence from which the jury may have found that the appellant made a practice of always using checks which recited "In full payment, satisfaction, discharge, compromise and release of any and all claims," etc., when a. payment was made to a policyholder, whether final or not.

Of course, the agents of the appellant involved in the making of the applications and the one involved in the making of the one thousand dollars payment denied respondent's version of the facts *in toto* and themselves so testified as, if believed, to establish complete defenses upon both of these issues.

It is the province of a jury to judge of the credibility of witnesses and to determine every issue

of fact submitted. In such a case as this, where the jury chose to believe the respondent as against the agent of appellant in each of the three vital transactions which were in issue, its judgment is final. So, also, as to every issue of fact in the case. There being substantial evidence to support the verdict, we cannot inquire further.

The issue of "intent to deceive" on the part of the respondent and the issue of overreaching and fraud by the appellant in obtaining a full release were each jury questions, and there was sufficient evidence to carry each of those questions to the jury. *Rathbone, Sard & Co. v. Frost,* 9 Wash. 162, 37 Pac. 298; *Tacoma v. Tacoma Light & Water Co.,* 17 Wash. 458, 50 Pac. 55; *Lilienthal v. Herren,* 42 Wash. 209, 84 Pac. 829; *McMillen v. Hillman,* 66 Wash. 27, 118 Pac. 903; *Titan Truck Co. v. Richardson,* 122 Wash. 452, 210 Pac. 790; *McClure v. Wilson,* 147 Wash. 119, 265 Pac. 485; *Hopkins v. Lotus Cafe,* 161 Wash. 493, 297 Pac. 178.

Error is assigned upon the admission in evidence of a letter and a postal card sent by the appellant to the respondent, after the loss occurred, soliciting the renewal of his insurance. In the light of the circumstances under which these communications were sent, we regard them as having little probative value, but it cannot be said that they were so far immaterial as to be inadmissible.

All of the remaining assignments of error relate to instructions given and to requested instructions refused. We have carefully considered each and find nothing which would justify the further extension of this opinion by a detailed discussion.

The instructions given fairly stated the law applicable, and if in one the jury was directed to pass upon a fact already admitted, it seems fairly obvious

that the jury was not misled and that the appellant was not thereby prejudiced.

Complaint is made of the refusal to give three requested instructions. The subject matter of each of these was sufficiently covered by instructions given, and, in addition, each presented a too narrow rule upon the subject treated.

Finding no reversible error, the judgment appealed from must stand affirmed.

MITCHELL, GERAGHTY, and STEINERT, JJ., concur.

BLAKE, J. (dissenting)—I think the respondent was bound by the release—particularly in view of the fact that he surrendered the policy to appellant. The majority say:

"Respondent testified that he had no reason to believe or suppose that the paper was other than a receipt or that he was being asked to sign a release; that, having mislaid his glasses, he could not read, and relying upon the representation of the adjuster he signed the paper as a receipt. The paper, in fact, by its terms is a full release and acquittance of all right, title, claim, interest, and demand accrued, or accruing, under the policy, and a discharge of the appellant from any and all liability thereunder."

This court has consistently held that one having the ability to read and understand the English language, who fails to read an instrument, cannot predicate fraud on any misrepresentation as to its character or contents. In *Johnston v. Spokane & Inland Empire R. Co.*, 104 Wash. 562, 177 Pac. 810, the court said:

"We have always held that a party whose rights rest upon a written instrument which is plain and unambiguous, and who has read or had the opportunity to read the instrument, cannot claim to have been misled concerning its contents or to be ignorant of what is provided therein. *Sherman v. Sweeny*, 29 Wash.

321, 69 Pac. 1117; *Hubenthal v. Spokane & Inland R. Co.,* 43 Wash. 677, 86 Pac. 955; *Golle v. State Bank of Wilson Creek,* 52 Wash. 437, 100 Pac. 984."

I dissent.