[No. 27731. Department Two. January 29, 1940.]

ANNIE WIGGINS, *Respondent*, v. NORTH COAST TRANS-
PORTATION COMPANY, *Appellant*.[1]

[1]Reported in 98 P. (2d) 675.

*J. Speed Smith* and *Henry Elliott, Jr.* (*J. L. Rucker,* of counsel), for appellant.

*John C. Richards* and *Earl W. Husted,* for respondent.

JEFFERS, J.—This action was instituted by Annie Wiggins against North Coast Transportation Company to recover damages for personal injuries sustained while a passenger on one of the stages of defendant company. Trial to the court and jury resulted in a verdict in favor of plaintiff, and defendant company has appealed from a judgment entered on the verdict.

The complaint alleged that plaintiff was injured by the negligent operation of the stage in suddenly stopping same with great force and violence at a point about ten miles north of Marysville; and also alleged that plaintiff was injured by the negligent operation of the stage in suddenly stopping it with great force and violence at a street intersection in the town of Marysville.

To this complaint, defendant interposed, among others, a motion to require plaintiff to separately state the causes of action contained in her complaint, contending that any injury claimed to have been sustained by plaintiff, by reason of the negligence of defendant, at the stop north of Marysville and at the Marysville stop, constituted separate and distinct causes of action. The trial court denied the motion, and thereafter defendant answered and went to trial on the issues made by the pleadings.

After the evidence had all been submitted; the court took from the consideration of the jury any claimed negligence of defendant based upon the stop north of Marysville and instructed the jury that they were to consider only the injury, if any, sustained by plaintiff at the Marysville stop.

The jury returned a verdict in favor of plantiff for ten thousand dollars. Motions for new trial and for judgment notwithstanding the verdict were timely made. The court denied the motion for judgment notwithstanding the verdict and stated that it would grant

the motion for new trial unless plaintiff, within three days, filed a written acceptance of a reduction of the verdict to six thousand dollars. Plaintiff filed such a written acceptance, and thereafter, on April 10, 1939, judgment was entered for six thousand dollars, and this appeal followed.

Appellant makes six assignments of error. Under the first assignment, it is contended the trial court erred in denying appellant's motion to require respondent to separately state the several causes of action set out in her complaint.

■ We cannot agree with respondent that the complaint is based on a breach of contract to safely carry respondent. Clearly, we think this is a tort action. See 4 Williston on Contracts (Rev. ed.), 3170, § 1113; 9 Blashfield, Cyc. of Automobile Law, 4, § 5771; *Compton v. Evans,* 200 Wash. 125, 93 P. (2d) 341.

■ However, we are of the opinion appellant's contention cannot be sustained, for the following reasons: By taking from the consideration of the jury any claimed negligence of appellant based upon the stop north of Marysville and limiting the consideration of the jury to the negligence, if any, of appellant at the Marysville stop, and the injury, if any, resulting to respondent by reason of such stop, we think any error which might have resulted from a failure of the trial court to require respondent to separately state, was harmless.

■ In addition to this, we think appellant waived any error based upon the refusal of the trial court to grant this motion by answering the complaint and going to trial on the issues made by the pleadings. *Port Townsend v. Lewis,* 34 Wash. 413, 75 Pac. 982; *Bishop v. Ryan Const. Co.,* 106 Wash. 254, 180 Pac. 126.

The cases of *Hockersmith v. Ferguson,* 51 Wash. 256, 98 Pac. 670, and *Hockersmith v. Sullivan,* 71 Wash. 244, 128 Pac. 222, cited by appellant, are not in point, for the reason that, in the *Ferguson* case, the plaintiff, after a motion to require him to separately state had been granted, stood upon the complaint and refused to plead further. The *Sullivan* case involved the same issues and the same parties as the *Ferguson* case, and we held the *Ferguson* case was *res adjudicata* of all claims made in the *Sullivan* case.

We next desire to discuss appellant's assignments of error Nos. 5 and 6, which are based upon the refusal of the court to grant appellant's motion for judgment notwithstanding the verdict and the entry of judgment for respondent. These assignments of error require a consideration of the evidence.

In passing upon a motion for judgment notwithstanding the verdict, we must not only accept as true all competent evidence in the record favorable to respondent, but also must give her the benefit of every favorable inference which may reasonably be drawn from such evidence. *Vercruysse v. Cascade Laundry Co.,* 193 Wash. 184, 74 P. (2d) 920.

The testimony of respondent shows that, on Christmas eve, 1937, she purchased tickets to Everett for herself and two grandchildren. The passenger traffic was heavy, and, the regular bus to Everett being full, respondent and her grandchildren took a special bus, leaving Mount Vernon about six p. m. Respondent took the front seat on the left side of the aisle, immediately back of the driver. One of her grandchildren, Roland Scott Monroe, took the front seat across from his grandmother. It was a cold night, and the highway was covered with ice and slippery. At a point about ten miles north of Marysville, the bus came into collision with a car driven by a Mrs. Nelson, and re-

spondent was thrown to the floor, striking her left knee. However, she got up without assistance, and took her seat again. The facts relative to this accident are not in dispute, and the court took from the consideration of the jury any question of negligence of appellant based upon this stop and any injury of respondent claimed as a result thereof. No error is predicated on the action of the trial court in withdrawing this matter from the jury.

It further appears from the evidence that, after this accident, the bus proceeded towards Marysville. Respondent further testified that the bus was traveling about fifty miles an hour, in the town of Marysville, as it approached the intersection; that she saw the light as the bus approached it, and it was green; that the driver speeded up to about sixty miles to pass through the intersection; that he did not pass through the intersection, but put on his brakes and came to a sudden stop, and respondent was thrown forward, striking her left knee against the back of the driver's seat; that her grandson, Roland Monroe, was thrown out of his seat onto his knees and against the front of the bus.

Roland Monroe, the twelve-year-old grandson, testified that the light was green when the bus was about four hundred feet away; that the bus speeded up to make the light, but the light turned red, and the bus came to a very sudden stop; that he was watching the speedometer, and that the bus was traveling forty-nine to fifty-five miles per hour in Marysville; that, when the bus stopped, he was thrown to the floor on his knee, which started bleeding, his grandmother was thrown against the driver's seat, and the man on the seat beside him was thrown onto the step in front of the seat.

Harry Owens, a passenger on the bus, who was seated beside respondent, testified that he estimated the speed of the bus in Marysville at twenty-five miles per hour;

that he did not notice that it speeded up before reaching the light, but that it did stop abruptly, and Mrs. Wiggins was thrown forward and struck her knee against the metal back of the driver's seat; that respondent complained of her knee, and kept rubbing it all the way to Everett.

Vernon Ramnes, also a passenger on the stage, testified that he worked in a garage; that the bus was traveling around forty to fifty miles per hour in Marysville, just before reaching the light; that the driver applied his brakes suddenly, and the bus skidded forward eight or ten feet and stopped in a distance of ten to fifteen feet from the time the brakes were applied; that the witness went forward in his seat, but did not go out.

Marion La Fave, Madeline Boweran, William Hegwine, Grace Fenerborn, and Earl Lee, driver of the stage, all testified to the effect that the bus was being driven slowly, about twenty to twenty-five miles per hour, and that there was no other sudden stop after the one north of Marysville.

Upon this record, appellant contends there was shown no evidence of negligence upon the part of appellant at the Marysville stop, contending that the stop was a mere incident of travel, and that this case is within the rule that a carrier is not liable for ordinary jerks and jolts which are incident to travel. Appellant admits that it must exercise the highest degree of care compatible or consistent with the practical operation of its busses. It is apparent that the evidence is conflicting, both as to the speed of the bus in approaching the light, and as to the effect of the stop on the passengers.

A motion for judgment notwithstanding the verdict involves no element of judicial discretion. It can only be granted when the court can say, as a

matter of law, that there is neither evidence nor reasonable inference from evidence to sustain the verdict. *Karr v. Mahaffay,* 140 Wash. 236, 248 Pac. 801; *Carroll v. Western Union Tel. Co.,* 170 Wash. 600, 17 P. (2d) 49; *Corbaley v. Pierce County,* 192 Wash. 688, 74 P. (2d) 993. It is the province of the jury to judge the credibility of the witnesses, and to resolve all conflicts in the evidence. *Humphreys v. Seattle,* 152 Wash. 339, 277 Pac. 834, 281 Pac. 994; *Sauers v. Mutual Benefit etc. Ass'n,* 187 Wash. 262, 60 P. (2d) 103; *Cassels v. Seattle,* 195 Wash. 433, 81 P. (2d) 275.

 The ordinary jolts and jerks of the bus in starting or stopping are among the usual incidents of travel; and for injuries resulting from them, the carrier is not liable. The sudden stopping of the vehicle is not of itself evidence of negligence, but the vehicle may be stopped so suddenly as to furnish evidence of negligence.

"In general, no fixed rule can be laid down as to what constitutes such a sudden or abrupt stopping of a bus as to give rise to an inference of negligence; each case being determinable upon the particular facts shown and presenting a question of fact." 4 Blashfield, Cyc. of Automobile Law, 17, § 2156.

In order to establish liability of a carrier, it is not enough that plaintiff show that the stage was "going quite fast," or that it gave a "sudden lurch or jerk," as in the case of *Wade v. North Coast Transportation Co.,* 165 Wash. 418, 5 P. (2d) 985, cited by appellant, or that there was a sudden stop, but there must be evidence of what appeared to take place, as physical facts from which it can be inferred that the operator of the vehicle was negligent, or evidence capable of conveying to the ordinary mind a definite conception of some conduct on the part of those in charge of the

vehicle, outside of that of ordinary experience, on which a finding of negligence could rest.

The case of *Griffin v. Springfield St. R. Co.,* 219 Mass. 55, 106 N. E. 551, distinguishes the case of *McGann v. Boston Elevated R.,* 199 Mass. 446, 85 N. E. 570, 127 Am. St. 509, 18 L. R. A. (N. S.) 506, and like cases cited by appellant. Referring to such cases, the court stated:

"Apparently it was in the mind of the court that conditions might be shown which would indicate that jolts and jerks were the result of negligence. Those decisions did not purport to lay down an absolute and inflexible proposition, but only to formulate a practical working rule adapted to common observation and the evidence then before the court."

A case much in point is *Roy v. United Electric Rys. Co.,* 53 R. I. 22, 164 Atl. 513.

We have an expression of this court in the late case of *Keller v. Seattle,* 200 Wash. 573, 94 P. (2d) 184, which is very convincing that the testimony as to the physical facts in the instant case take it without the rule of ordinary jerks and jolts usually incident to travel. While the *Keller* case was reversed because of an instruction given, Judge Robinson, speaking for the court, stated that the following testimony of Mrs. Belarde was sufficient to warrant an inference of negligence:

" 'Q. Did you feel the jerk? A. Yes, I did. Q. What happened when you felt the jerk? A. Well, I was thrown forward and my hat knocked to the back of my head. Q. How far forward? A. Well, far enough that I bumped my knees and I hit my hat on the person in front of me. Q. You bumped your knees, I presume on the back of the seat in front of you? A. Yes.' "

Under cross-examination, this witness further testified:

" 'Q. Was anybody else thrown forward in the seat? A. I did not notice. I was busy, I did not notice. My hat was thrown forward. . . . Q. Were your knees bruised? A. I could not say they were bruised, but they did get a sharp bump.' "

When we consider that there is testimony in the record in the case at bar, which the jury were entitled to believe, to the effect that, within the town of Marysville, and approaching the intersection, the driver of the bus was driving fifty miles per hour; that, apparently with the intention of going through the light, he speeded up his bus, and then when the light turned red, applied his brakes suddenly and brought the bus to a sudden stop, which caused respondent to be thrown forward, striking her knee on the seat in front of her, and also caused her grandson to be thrown from his seat to the floor, we think there is no question but that there was sufficient testimony to warrant the trial court in submitting to the jury the question of appellant's negligence. See *Allen v. Schultz,* 107 Wash. 393, 181 Pac. 916, 6 A. L. R. 676; *Colvin v. Auto Interurban Co.,* 132 Wash. 591, 232 Pac. 365; *Fairchild v. Dean,* 198 Wash. 1, 86 P. (2d) 271.

■■ Appellant next contends there is no evidence of injury to respondent resulting from the Marysville stop, contending that the injury, if any, sustained by respondent was caused by the stop north of Marysville. Respondent testified that, prior to this trip, she had never had any trouble with her left leg or knee, and that she had never been previously injured; that she did not have much pain from being thrown from her seat north of Marysville; that, at the Marysville stop, she was thrown forward and hit the back of the driver's seat with her left knee; that the back of the seat was very hard; that, after the Marysville stop, her knee hurt so that at times she groaned out loud, and that

she rubbed her knee all the way to Everett. We think the evidence is practically undisputed that respondent was injured, and also as to the extent of the injury.

It appears that respondent was in great pain for some time after the accident. This pain continued, and the knee swelled; and about December 28th or 30th, respondent visited Dr. Flynn, in Everett, where she was given electrical treatments and put to bed. On January 6th, she was removed to a hospital, where she stayed until February 1st. The knee is no better, but is stiff and painful, and the medical testimony is all to the effect that this condition will render the knee permanently stiff. While it is true that Dr. H. T. Buckner, to whom respondent was sent for an examination, and who saw and examined respondent only once, testified that respondent had an arthritic condition of the left knee, it also appears that an X-ray examination of respondent's knee, made by Dr. Brooks and Dr. Anderson, disclosed an injury to the knee joint, and also to the cartilage and ligaments of the knee.

There was some conflict in the testimony regarding statements made by respondent as to whether the injury was sustained at the Marysville stop or the stop north of Marysville. Again, we think it was for the jury to determine whether or not respondent's injury was the proximate result of the Marysville stop. The testimony certainly does not, in our opinion, show that the injury was caused by the first stop and not the one at Marysville, and it is undisputed that her knee was struck at the Marysville stop.

The trial court very carefully and fully instructed the jury that, if they found for respondent, recovery must be limited to the injury, if any, sustained at the Marysville stop. The jury were also instructed that they could not speculate as to the cause of injury, if any, to respondent. We are therefore of the opinion

that the court was justified in submitting to the jury this question, and we are also satisfied that the judgment of six thousand dollars is not excessive, under the evidence.

Appellant next contends that the trial court erred in refusing to give requested instructions Nos. 8 and 13. Without setting out the proposed instructions, we think, in so far as applicable to the facts herein, they were covered in substance by instructions given.

In addition, we think appellant waived any right to claim error based upon the failure of the court to give the requested instructions. Appellant does not deny that it waived its exception to proposed instructions Nos. 8 and 13, but contends it was coerced into doing so. We do not think the record bears out this contention. At the time appellant excepted to the refusal of the court to give requested instructions Nos. 8 and 13, the court stated that, if counsel for appellant insisted on these exceptions, the court was inclined to call the jury back and give respondent's proposed instruction No. 19; but the court stated that, if counsel for appellant would waive his exception, then the court, on its own responsibility, would refuse respondent's proposed instruction No. 19, to which the court felt respondent was entitled if appellant's requested instructions Nos. 8 and 13 were given. Whereupon, counsel for appellant waived his exceptions to instructions Nos. 8 and 13, as proposed. The court indicated that, had appellant not waived its exceptions, the court would have given respondent's requested instruction No. 19. Appellant could, of course, have excepted to the giving of instruction No. 19, had it desired to do so, and thus protected its record, but instead of doing that, it apparently decided to take a chance, and we do not think it should now be heard to complain.

458

Respondent contends the verdict of ten thousand dollars should be reinstated, under Rem. Rev. Stat. (Sup.), § 399-1 [P. C. § 8225-1] (Laws of 1933, chapter 138, p. 482, § 2). We have carefully examined the record in this case, and we think the trial court, under the issues and facts before it, properly exercised its discretion in reducing the verdict. In other words, we are convinced that a verdict of ten thousand dollars is so excessive as to indicate it must have been the result of passion or prejudice. See *Bennett v. King County*, 188 Wash. 196, 61 P. (2d) 1316.

The judgment, reduced and consented to in the sum of six thousand dollars, is affirmed.

BLAKE, C. J., BEALS, STEINERT, and GERAGHTY, JJ., concur.

