[No. 6193. Decided August 13, 1906.]

AGNES DIGNAN, *by Mary Dignan, her Guardian Ad Litem,
Appellant,* v. THE COUNTY OF SPOKANE, *Respondent.*[1]

HIGHWAYS—INJURIES—BRIDGES—CONDITION—PROXIMATE   CAUSE—
RUNAWAY TEAM.  A county is not liable for personal injuries sus-
tained in the overturning of a wagon through the running away of
a team, the pole having dropped from the neck yoke and the end
sliding along the ground until it caught in the loose and warped
planks of a small drainage bridge or culvert, where it appears that
the bridge, while somewhat decayed and uneven, was reasonably safe
for ordinary travel for any conveyances driven at ordinary speed;
since its condition was not the proximate cause of the injury.

Appeal from a judgment of the superior court for Spo-
kane county, Carey, J., entered November 4, 1905, in favor
of the defendant, granting a nonsuit at the close of plaintiff's
case, in an action for personal injuries sustained through a
defective bridge. Affirmed.

*Del Cary Smith, Sullivan, Nuzum & Nuzum,* and *George
M. Ferris,* for appellant.

*Richard M. Barnhardt, A. J. Laughon,* and *Carroll A.
Gordon,* for respondent.

FULLERTON, J.—The appellant was injured by the over-
turning of a wagon in which she was riding, and brought
this action to recover therefor, alleging that the proximate
cause of the accident causing the injury was a defect in the
county road along which she was being driven. At the place
of the injury a gully or ravine crossed the road at right
angles, at the bottom of which was a drainage ditch, which
was bridged over by heavy planking laid on stringers. The
stringers upon which the planking rested had become some-
what decayed, allowing the nails which originally held the
planking to the stringers to pull; and this, in turn, had al-
lowed certain of the planks to warp or cup up, leaving the sur-

[1]Reported in 86 Pac. 649.

face of the bridge somewhat rough and uneven. As the wagon approached the bridge and started to descend the hill into the gulley, a dog, coming from a residence at the side of the road, jumped at a dog which was following the wagon. This caused the latter dog to take refuge near the feet of one of the horses, which, kicking at the dog, broke a single-tree, which in turn unhitched him from the wagon. On becoming unhitched the horse jumped forward and pulled the neck yoke from the end of the wagon tongue, letting its forward end drop to the ground. The team then started to run toward the bridge, dragging the wagon with the forward end of the tongue sliding on the ground. On reaching the bridge the tongue slid over the first two boards but struck and passed under the third, catching on the ground on the opposite side of the ditch, stopping the forward movement of the wagon, which either by its own momentum or the pull of the unhitched horse, overturned, throwing the appellant out and causing the injuries for which she sues. The plank on the bridge under which the wagon tongue passed was one of those which had become loose and warped.

At the conclusion of the appellant's case in chief, the court took the case from the jury, on the ground that the evidence was insufficient to justify a verdict for the appellant, and directed a dismissal of the action. A judgment of dismissal was thereupon entered, and this appeal was taken therefrom.

It is the contention of the appellant that, had the planking on the bridge been securely fastened to the stringers on which they lay so as to present a smooth surface, the wagon tongue would have slid over the bridge without catching, and in consequence the wagon would not have been overturned or the plaintiff injured; and her counsel argue that the defect in the bridge was the immediate, and hence the proximate, cause of the accident. It is possible, of course, that had the bridge been in the condition the appellant would have it, the wagon tongue might have slid safely over it and the appellant thereby escaped injury, but it seems to us this is not the test

of the county's liability. The county is obligated to keep its highways in a reasonably safe condition for ordinary travel only, not so that it may insure protection against its use in an extraordinary or unusual manner. Suppose, for example, that the way was in reasonably safe condition for use in the ordinary methods, and the appellant had designedly let the front end of the wagon tongue slide on the ground, and disaster had resulted, would any one for a moment contend that the county would be liable for injuries caused by the disaster? Certainly not, for the very efficient reason that the appellant did not put the road to the use for which it is intended. Now the fact that the wagon tongue dropped as the result of accident, and not of design, does not alter the case. Inasmuch as the county was not responsible for the accident which caused the tongue to drop, or the accident was not such a one as the county was bound to foresee and guard against, the conditions were, as to the county, the same as they would have been had the tongue been dropped designedly; it is liable only in case it failed to keep the highway in a reasonably safe condition for ordinary travel.

On the question whether or not the bridge was thus reasonably safe we are unable to find any dispute in the evidence. The testimony of all the witnesses is that there was no danger in passing over it, if the passage was made in the ordinary way. While the stringers had decayed somewhat, and some of the planks had warped owing to the action of the elements, yet one could safely drive or ride over it with any of the carriages and wagons in common use, when driven at an ordinary speed and in the ordinary manner. To be reasonably safe for ordinary travel, a bridge does not have to be in such a condition that the tongue of a wagon dropped in front and pulled on to it front on, will slide over it without catching. If a bridge on a highway must be kept in that condition, then must all of the balance of the highway be kept in the same condition, as the bridge is of no more importance relatively than is the balance of the way, a burden, it is un-

necessary to say, counties could not bear. Nor is it necessary in order that the bridge may be in a reasonably safe condition that the stringers be perfectly sound, or that the planking be nailed fast to the stringers. These are mere details of construction. The bridge must be examined as it is at the time of the accident, and if at that time it is reasonably safe for ordinary travel in spite of its condition, it is enough to satisfy the law, and no recovery can be had for accidents occasioned by it. As we say, there was no dispute in the evidence that the bridge was thus reasonably safe, and therefore the court did not err in refusing to submit the question to the jury.

The case of *Gray v. Washington Water Power Co.,* 27 Wash. 713, 68 Pac. 360, relied upon by the appellant, is not against the position we take here. In that case it was expressly alleged and proved that the defect that caused the accident rendered the street unsafe for ordinary travel, while in this case the proofs are to the contrary. This case falls more nearly within the case of *Teater v. Seattle,* 10 Wash. 327, 38 Pac. 1006, where it was held the city was not liable for failing to maintain a railing on a bridge, which might have prevented the accident complained of, when such railing was not required to render the bridge reasonably safe for ordinary use.

The judgment is affirmed.

MOUNT, C. J., RUDKIN, DUNBAR, CROW, and ROOT, JJ., concur.