[No. 15800.   Department Two.   August 6, 1920.]

## W. H. MEAD, *Appellant*, v. CHELAN COUNTY, *Respondent*.[1]

HIGHWAYS (64)—INJURIES TO TRAVELER—NOTICE OF DEFECT.   A county is not liable for injuries sustained by a traveler through a skidding of his wagon off a curve on a steep mountain road by reason of the dangerous and slippery condition of the roadway caused by the freezing of water escaping from an irrigation ditch, there being no proof that the county had knowledge of the existence of water in the ditch at that time of the year, and it not appearing that at other times the water and mud caused thereby created a dangerous condition.

SAME (65)—CONTRIBUTORY NEGLIGENCE—APPARENT DANGERS—EVIDENCE—SUFFICIENCY.   The driver of a heavy team and wagon carrying a very heavy load down a road containing sharp curves and steep grades is guilty of contributory negligence precluding a recovery for injuries sustained through the skidding of the wagon off a sharp curve covered with ice, he being familiar with the locality and having actual notice of the ice in the roadway before coming to the place of the accident, and so fully appreciated the probability of danger as to stop his team and examine his brakes before entering upon the curve.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered April 11, 1919, upon granting a nonsuit, dismissing an action for injuries sustained through defects in a county road. Affirmed.

*Ludington & Shiner*, for appellant.

*W. F. Whitney*, for respondent.

[1]Reported in 191 Pac. 825.

TOLMAN, J.—On November 23, 1916, appellant, who was plaintiff below, was engaged in hauling apples from his farm on the Wenatchee Heights to the city of Wenatchee. He traveled what is known as the "Snake Road," because of its curves, with a load of some two and one-half tons, on an ordinary two and three-fourths skein farm wagon drawn by a team weighing about 2,200 pounds. The road at this point passes along a ridge or hog-back for a few hundred feet, and at this point there is an irrigation ditch above the road, fed from a flume. Occasionally in the history of the road, this ditch has broken or become stopped up and overflowed so as to permit the water to escape into the road, and at such times some passerby or the road supervisor, under general orders from the county commissioners, has removed the flume, swinging it back so that the water escaped in some other direction, thus stopping the flow into the road. The evidence as to notice to the commissioners and orders from them to remove the flume is somewhat hazy at best, but even if direct and positive, it would have advised them of inconvenience merely, not danger to the traveling public.

Two days before the time in question, appellant had traveled this same road and found no water in it, and on the morning of the accident he drove down the road, past the flume and ditch, descending a grade of approximately two per cent, and there found that water had escaped into the road and followed down the left wheel track, causing mud and thin ice through which the wheels of the wagon readily cut. Continuing down the road, he came to a place where the road curved sharply so as to make a switch-back and fell off rapidly into a descent of ten per cent or more, and on this curve the roadbed was hard and impervious so that

water, instead of following the wheel track as theretofore, spread over the entire roadway, and as so spread out it froze solidly, forming a slippery surface through which, it developed, the wheels would not cut and upon which the horses could get no secure footing. Before entering upon the curve and the steep grade, appellant stopped his team, looked after his brake and equipment to see that everything was in order, and then started forward. As the team and wagon began to swing around the curve on the slippery, frozen, icy surface, the wagon skidded, the horses lost their footing, and team, wagon and driver were carried off the road and down the sheer mountain side, appellant sustaining severe injuries for which he sues. On the trial below, at the close of appellant's case, a nonsuit was ordered, from which result this appeal is taken.

The nonsuit appears to have been granted on the theory that the unsafe condition of the road was not shown to have existed for a sufficient length of time to put the county on notice. It does not appear that either the running water in the roadway or the mud caused thereby was ever in itself a menace to one using the road. On the contrary, it is made to appear that some mud and water had a tendency to make the wheels cut in, and this actually made the roadway safer and less likely to produce such an accident as occurred here. But it is argued that, if the condition happened in freezing weather, the county was bound to anticipate that the water would freeze, form ice, and become dangerous. The fallacy of this argument lies in the lack of proof in the case that the county commissioners knew, or had any reason to anticipate, that there would be water in the flume or ditch after the close of the irrigation season and during that portion of the year when freezing weather was to be ex-

pected. It is to be borne in mind that this was a somewhat remote mountain road serving but few families, and, in the nature of things, the commissioners could not be required to give it constant or even frequent inspection, but might rely upon the users of the road or those living in the neighborhood to give them notice of any unusual conditions which would render the road unsafe. The facts fall far short of what is required for the application of the rule announced in *Blankenship v. King County,* 68 Wash. 84, 122 Pac. 616, 40 L. R. A. (N. S.) 182, upon which appellant seems to rely.

But without continuing the discussion upon this point, we think, under the facts shown, that appellant should be held guilty of contributory negligence or assumption of risk. Considering the size of his wagon and the weight of his team, he was carrying a very heavy load upon a road abounding in sharp curves and steep grades with which he was entirely familiar, and must have known that he was loaded to the extreme limit of safety under favorable conditions. He had actual notice of the presence of the water and ice in the road before coming to a place where any prudent person, familiar with conditions as he was, must have known that those conditions might prove dangerous, and he so far appreciated the probability or possibility of danger as to then stop his team and look to his equipment. This all occurred in broad daylight in the middle of the forenoon, and it is not shown that he could not and did not see that the water had spread thinly out and frozen over the whole roadway immediately ahead of him. He must, in fact, have so seen had he looked, and certainly, under the conditions here shown, it was his duty to look. Charged with this

notice, if he then deliberately drove into a place of danger, he cannot recover. The judgment is affirmed.

HOLCOMB, C. J., FULLERTON, MOUNT, and BRIDGES, JJ., concur.