[No. 26098. *En Banc.* October 26, 1936.]

MARY BOSKOVICH, *Individually and as Guardian Ad Litem for Rose Marie Boskovich, a Minor, Respondent,* v. KING COUNTY, *Appellant.*[1]

*Warren G. Magnuson, Patrick M. Tammany,* and *Charles C. Ralls,* for appellant.

*P. O. D. Vedova* and *Wallace G. Collins,* for respondent.

BEALS, J.—The Renton-Maple Valley road, in King county, is a well traveled thoroughfare, and runs for a considerable distance by the side of Cedar river. For a distance east from the city of Renton, the road runs generally east and west, and lies at the foot of high and often steep hills, which border it on the north.

[1]Reported in 61 P. (2d) 1299.

The road is sixty feet in width, twenty feet of which is paved. The high land bordering the road often contains clay strata, porous earth and springs, a combination which at times results in slides. The road was established in 1923 and has been maintained ever since.

Plaintiff, Mary Boskovich, left her home in Seattle late on the afternoon of January 22, 1935, driving her Hudson sedan and carrying as passengers her eight year old daughter, Rose Marie, and her friend, Mrs. Mary Brockman. Her objective was the town of Buckley, where she intended to visit her parents. For many years prior to the accident, she had been accustomed to drive over the highway in question, although on her visits to Buckley she occasionally used other roads. During the month of January, 1935, heavy rains had produced general flood conditions throughout King and adjacent counties. As Mrs. Boskovich testified, the other roads were impassable because of high water, and she therefore chose the Renton-Maple Valley highway. As the car proceeded about one and one-half miles east of Renton, a slide suddenly broke loose from a point about three hundred fifty feet up the hillside from the roadway, and, gaining considerable momentum in its course, struck the automobile, injuring Mrs. Boskovich and her daughter, as well as damaging the car.

Mrs. Boskovich, individually and as guardian of her minor daughter, instituted this action against King county, asking damages for her daughter's injuries, for her own, and for the damages to the automobile. The action was tried to the court, sitting without a jury, and resulted in a judgment in plaintiff's favor, from which the county has appealed.

The county assigns error upon the denial of its motion for nonsuit, upon the entry of certain findings of

fact and conclusions of law, and upon the entry of judgment. Only one question is presented, to-wit, the liability of the county for damages resulting from the slide.

There was a slight cut in the hillside at the point of the accident. This toe of the slope slid little, if any.

Respondent contends that the county was negligent, first, in carelessly performing work on the hillside after a previous landslide; second, in permitting a dangerous condition on the hillside to exist after having notice that the land was subject to slides, and without giving notice or warning of the dangerous condition to the traveling public; and third, by permitting logs and other debris to remain upon the hillside.

It clearly appears from the evidence that other slides had occurred in the vicinity of the one which injured respondent, and that the formation of the hills adjacent to the road was of such a character as to result in slides during periods of heavy rainfall.

One of respondent's witnesses, the road foreman in charge of the highway, testified that at the exact point of the accident the hillside showed evidence of a very old landslide, there being a "bench" in the hill at some distance up from the road. This, of course, would be some indication that a slide would be less likely to occur at that particular spot, as the slope was less precipitous and was broken by the bench. It appears that the road crew were busily occupied keeping the road clear, and that two of the crew passed the point where the accident occurred only a few minutes before it happened, at which time there was no indication that a slide was imminent.

In regard to respondent's contention that the traveling public should have been warned of the danger of slides, it is difficult to see what useful "warning" could have been given. If the situation was so danger-

ous as to call for the closing of the road, the public could have been protected by taking that action, but we find no basis in the record in this case for holding that the road should have been closed. Many other roads were shut off by high water, and the closing of the road in question would have seriously interfered with the convenience of the public.

It is manifest that the driving of the automobile did not cause the slide; a heavy truck driving at high speed might have caused a slide, but it is not contended that any such thing occurred here. The slide started far up the hillside, and respondent's automobile, without any fault of respondent, was struck as the falling mass hit the road. It is difficult to imagine upon what theory it can be contended that a notice of danger, or any sort of "warning," would have been of the least assistance in this case.

This leaves the question of whether or not the county was guilty of any negligence which can be held to be a proximate cause of the injury suffered by respondent and her daughter.

A county is not an insurer of the safety of persons using its highways. In constructing and maintaining roads, a county performs a most important governmental function to meet the necessities of the people. The old measure of responsibility, however, still stands, and counties are held to no greater burden than to maintain their roads in reasonably safe condition for ordinary travel, under ordinary conditions, or such as should reasonably be anticipated.

In the early case of *Teater v. Seattle*, 10 Wash. 327, 38 Pac. 1006, this court held, in an action against the city for damages on account of the loss of two horses and damage to a buggy, that the absence of a guard rail from a bridge did not necessarily infer negligence. In the course of its opinion, this court said:

"The city is not an insurer of the safety of its streets, but is only required to keep them in a safe condition for ordinary travel."

A judgment of dismissal based upon the granting of a motion for nonsuit was affirmed.

In the case of *Dignan v. Spokane County*, 43 Wash. 419, 86 Pac. 649, the plaintiff sued for injuries occasioned by the overturning of a wagon in which she was riding, and claimed that the proximate cause of the accident was a defect in the county road. It appeared that the road crossed a drainage ditch on a bridge of heavy planks laid on stringers. Some of the planks had become loose and warped, rendering the surface of the bridge uneven. As the vehicle in which the plaintiff was riding approached the bridge, a plunge of one of the horses caused the wagon tongue to drop to the ground. The horses then ran, and the end of the tongue caught on one of the warped planks, overthrowing the wagon and injuring the plaintiff. The trial court took the case from the jury and dismissed the action, and on appeal this court affirmed the judgment, reaffirming the rule that a county is obligated to keep its highways in a reasonably safe condition for ordinary travel and that its responsibility extends no further.

Of course, in the case cited, the facts differed from those in the case at bar, as here respondent was using the road in an ordinary manner, while in the *Dignan* case the court called attention to the fact that the condition of the wagon in crossing the bridge was unusual and extraordinary. The court, having in mind the duty resting upon counties in connection with the maintenance of highways, used the following language, which is pertinent to all similar cases:

"If a bridge on a highway must be kept in that condition [referring to a practically perfect road], then

must all the balance of the highway be kept in the same condition, as the bridge is of no more importance relatively than is the balance of the way, a burden, it is unnecessary to say, counties could not bear.''

In the case of *Leber v. King County,* 69 Wash. 134, 124 Pac. 397, 42 L. R. A. (N. S.) 267, this court, in affirming a judgment of dismissal of an action for damages based upon the alleged negligence of the county in failing to maintain guard rails along a hillside county road, used the following language:

''We think it will require no argument to make plain the fact that here there was no extraordinary condition or unusual hazard of the road. A similar condition is to be found upon practically every mile of hill road in the state. The same hazard may be encountered a thousand times in every county of the state. Roads must be built and traveled, and to hold that the public cannot open their highways until they are prepared to fence their roads with barriers strong enough to hold a team and wagon when coming in violent contact with them, the condition being the ordinary condition of the country, would be to put a burden upon the public that it could not bear. It would prohibit the building of new roads and tend to the financial ruin of the counties undertaking to maintain the old ones. The unusual danger noticed by the books is a danger in the highway itself.''

The case last cited was referred to and followed in the case of *Culley v. King County,* 101 Wash. 38, 171 Pac. 1034.

It must be borne in mind that respondent's damage resulted from a cause arising outside the highway itself, and not from any defect in the roadway. To hold that a county must, at its peril, advise itself as to the nature of the terrain for three hundred or more feet up a hillside from a county road, under penalty of being liable to anyone injured by debris falling from such a distance, would place an impossible burden upon the

counties of this state. It must be borne in mind that it does not appear in the case at bar that the construction of the road had anything to do with causing the slide which injured respondent. There is no reason for doubting that the slide would have occurred just as it did had the road never been built. It frequently happens in this state that roads necessarily wind along high, steep hillsides, and can be constructed in no other place. Natural conditions cannot be changed, and roads must be constructed under extremely difficult conditions.

A case in point is that of *Topping v. Great Northern R. Co.*, 81 Wash. 166, 142 Pac. 425, L. R. A. 1915F, 1174. This was an action for damages based upon the death of the plaintiff's father, who lost his life in the avalanche which wrecked a railroad train stalled near the station of Wellington in the Cascade mountains. It was held that the railroad company, although a carrier for hire, bearing all resulting obligations from that relation, was not liable for damages resulting from the death of its passenger. It was held that the officers in charge of the train were not bound to anticipate an avalanche, or to know where one would cut its devastating path. In the course of its opinion, this court said:

"If it was a negligent act for the railway company to construct its road along the mountain-side, then it was negligence to construct its line or run its trains across the mountains. It is common knowledge that railroads cannot be constructed across the Cascade mountains without building tracks upon the mountain-sides. Nor was it negligence to fail to construct snow-sheds over the passing track. While it was known that this track was for the purpose of holding trains when taken off the main line, it is not shown, nor is it a fact, that any other slide had occurred at this particular point. In fact, the undisputed evidence is that no slide had ever occurred at this point previously.

The road had been operated and maintained for a period of seventeen years at this place, and no slide had ever occurred at this place. There was no negligence, therefore, in failing to anticipate a slide or an unusual storm or an unusual occurrence. . . .

"No one at that time anticipated, nor at any other time could anticipate, that a snowslide was about to occur at that place. It certainly cannot be held that the officers in charge of the train were required to know in advance that the storm which was then raging would continue for an unprecedented length of time, or that an avalanche of snow would come down the mountain-side at that place where a slide never had occurred when the snow had been much deeper."

Respondent argues that the county should have constructed some sort of a bulkhead or retaining wall which would have prevented the slide, but a careful reading of the evidence convinces us that no reasonable or practicable construction at the point of the slide would have prevented it, and also that the county had no notice that there was danger of a slide at that particular point.

Respondent cites authorities which would be apt if it could be held that the county had been guilty of any negligence, but which, in connection with the record before us, are not in point. Cases are also cited in which railroad companies were held liable for injuries resulting from slides which collided with trains, resulting in the injury of employees or passengers. A typical case is *Gleeson v. Virginia Midland R. Co.*, 140 U. S. 435, 11 S. Ct. 859, in which a railroad company was held liable for injuries resulting from a landslide which in part derailed a train upon which the plaintiff was employed. In the course of its opinion, the court said:

"To all intents and purposes a railroad track which runs through a cut where the banks are so near and so steep that the usual laws of gravity will bring upon

the track the *débris* created by the common processes of nature, is overhung by those banks. Ordinary skill would enable the engineers to foresee the result, and ordinary prudence should lead the company to guard against it.''

In the case of *Bean v. Western N. C. R. Co.*, 107 N. C. 731, 12 S. E. 600, the supreme court of North Carolina held a railroad company liable for a fall of rock which the court refers to as a ''standing menace.'' In these cases, it clearly appears that the danger of falling material was evident and that it was precipitated from the sides of the cut made in constructing the railroad. These cases are not in point here.

Respondent argues that the county should have removed from the hillside certain logs, stumps and other material resting thereon. It cannot be held that any such obligation rested upon the county. Such debris was a considerable distance up the hill from the roadside, and was not of such a nature or in such a position as to constitute, within the bounds of reasonable probability, any menace to persons traveling along the road.

Bearing in mind always that respondent was not negligent, it nevertheless must be held that she failed to show that appellant had been in any way negligent, either in constructing or maintaining the highway. We find no basis upon which it can be held that appellant is liable to respondent, and the judgment appealed from is accordingly reversed, with instructions to dismiss the action.

HOLCOMB, BLAKE, MAIN, MITCHELL, STEINERT, and GERAGHTY, JJ., concur.

TOLMAN, J. (dissenting)—While I am in hearty accord with the law as stated by the majority, yet I am convinced that the record reveals no just ground for the reversal of the judgment on the facts.

The trial court not only heard and saw the witnesses, but he personally viewed the scene of the accident and saw all of the physical conditions. Thus advised, he found that the county knowingly permitted a dangerous condition to exist and continue. We, having only the cold record before us, ought not to say that the evidence preponderates against that finding.

I therefore dissent.

MILLARD, C. J., concurs with TOLMAN, J.