[No. 35586.    En Banc.    November 1, 1962.]

BESSIE ALBIN, *as Administratrix, Appellant,* v. THE NATIONAL BANK OF COMMERCE OF SEATTLE *et al., Respondents.*

LARRY ALBIN, *Appellant,* v. THE NATIONAL BANK OF COMMERCE OF SEATTLE *et al., Respondents.**

*Reported in 375 P. (2d) 487.

*Peterson & Taylor* and *Ivan Merrick,* for appellants.

*Vaughn Hubbard,* for respondent National Bank of Commerce of Seattle.

*Dean W. Loney* and *Loney, Westland & Koontz,* for respondent Braden.

*Minnick, Hahner & Tuttle,* for respondent Columbia County.

HILL, J.—A car proceeding along a county road through a heavily-wooded, mountainous area, during a windstorm of disputed force, was struck by a falling tree.[1] The road, though remote and closed by snow during the winter, was used somewhat extensively during the deer and elk hunting season. One occupant of the car was killed and his son, then a minor, who was driving the car, was seriously injured.

An action to recover for the wrongful death of the father and the action for the son's injuries were consolidated for trial; the basic issues being:

A. The liability of (1) Columbia County for permitting the tree to stand in proximity to its road; (2) the National Bank of Commerce of Seattle, as trustee, the owner of the property on which the tree stood (hereinafter referred to as the "Bank"); and (3) Clarence Braden, alleged to be the owner of the tree—he having signed a "Timber Sale Agreement" whereby he purchased the timber of certain sizes, on the property on which the tree stood, and agreed thereby to remove all such timber within five years.

B. The availability of the defenses of (1) contributory negligence, and (2) volenti non fit injuria.

Columbia County was dismissed from the action by the trial court, and there was a jury verdict in favor of the other two defendants. A judgment of dismissal was entered on the verdict.

The plaintiffs appeal; and, in addition to the basic issues to which we have referred, make numerous assignments of claimed trial errors.

We will consider first the dismissal of Columbia County from the action by the trial court. A county is

---

[1] The top of the tree (a White Fir) had been broken off previously, and just before the accident it was approximately 95 feet in height and stood some 43 feet from the center of the road. When it fell, it broke off 25 feet above the ground and left a stump of that height.

obligated to keep its roads in a reasonably safe condition for ordinary travel. *McDonald v. Spokane Cy.* (1959), 53 Wn. (2d) 685, 336 P. (2d) 127; *Simmons v. Cowlitz Cy.* (1941), 12 Wn. (2d) 84, 120 P. (2d) 479; *Berglund v. Spokane Cy.* (1940), 4 Wn. (2d) 309, 103 P. (2d) 355; *Fritch v. King Cy.* (1940), 4 Wn. (2d) 87, 102 P. (2d) 249; *Dignan v. Spokane Cy.* (1906), 43 Wash. 419, 86 Pac. 649.

A county's liability to the users of its roads is predicated upon its having notice, either actual or constructive, of the dangerous condition which caused injury, unless the danger was one it should have foreseen and guarded against. *McDonald v. Spokane Cy., supra; Russell v. Grandview* (1951), 39 Wn. (2d) 551, 236 P. (2d) 1061; *Holland v. Auburn* (1931), 161 Wash. 594, 297 Pac. 769; *Blankenship v. King Cy.* (1912), 68 Wash. 84, 122 Pac. 616, 40 L. R. A. (N.S.) 182.

What will constitute constructive notice will vary with time, place, and circumstance. *Mead v. Chelan Cy.* (1920), 112 Wash. 97, 191 Pac. 825; *Noyes v. Gardner* (1888), 147 Mass. 505, 18 N. E. 423, 1 L. R. A. 354. See also 25 Am. Jur., Highways § 445, p. 737. In *Mead, supra,* the court, speaking of such a road, as we have in this case, said (p. 100):

" . . . It is to be borne in mind that this was a somewhat remote mountain road serving but few families, and, in the nature of things, the commissioners could not be required to give it constant or even frequent inspection, but might rely upon the users of the road or those living in the neighborhood to give them notice of any unusual conditions which would render the road unsafe. . . ."

There is no evidence that the county had actual notice that the tree which fell was any more dangerous than any one of the thousands of trees which line our mountain roads, and no circumstances from which constructive notice might be inferred. It can, of course, be foreseen that trees will fall across tree-lined roads; but short of cutting a swath through wooded areas, having a width on each side of the traveled portion of the road equivalent to the height of the tallest trees adjacent to the highway, we know of

no way of safeguarding against the foreseeable danger. At the present time this is neither practicable nor desirable. The financial burden would be unreasonable, in comparison with the risk involved. *Chambers v. Whelen* (1930), 44 F. (2d) 340, 72 A. L. R. 611; *Zacharias v. Nesbitt* (1921), 150 Minn. 369, 185 N. W. 295, 19 A. L. R. 1016.

The trial court did not err in dismissing Columbia County from the consolidated actions.

We turn next to a consideration of the liability of Clarence Braden, who was made a party defendant on the theory that by virtue of the "Timber Sale Agreement" with the bank, dated August 4, 1958, he was the owner of the tree which fell.

It is undisputed that Braden did not do the logging. He had never seen this tract of land, did not at any time exercise any control over the logging operation, and had no right to exercise such control. The tract was logged by John Lyons, a logging contractor hired by the real owner of the timber, *i.e.*, the EML Lumber Company, Inc., an Oregon corporation. Lyons received from EML twenty-six to twenty-seven dollars per thousand board feet delivered at the EML mill. Braden came into the picture because he was loaning EML sixty-five hundred dollars to buy the merchantable timber on the tract owned by the bank— the commercial banks being unwilling to loan money for that purpose.

Braden was given a chattel mortgage on the EML mill property, and title to the merchantable timber was taken in his name solely as a matter of security.

As soon as the logs were delivered at the mill by Lyons, a commercial bank was willing to make a loan to EML on them, and from the proceeds of that loan Braden was paid his sixty-five hundred dollars on September 15, 1958. Thereafter he had no interest in the land or the timber. The tree fell on October 14, 1958, while the logging operations were still continuing, though the operations had been moved beyond that particular locality.

The case should never have been submitted to the jury

on the issue of the liability of Clarence Braden, inasmuch as he never had anything but the bare legal title in the merchantable timber for security purposes.

Whether the plaintiffs were entitled to go to the jury, as against the bank as the owner of the property on which the tree stood, is not free from doubt. A majority of the court are of the opinion that the owner's liability was a jury question.

There is a marked distinction between the duty, with reference to trees, that may be imposed upon the owners of land adjacent to city streets or heavily traveled highways and those imposed on owners of forest lands adjacent to little-used roads.

A very recent case, emphasizing these distinctions, is *O'Brien v. United States* (1960), 275 F. (2d) 696. The opinion points out that courts and commentators are in disagreement as to whether, as a matter of law, a rural landowner should be saddled with a duty to inspect the natural conditions of his land near a public highway.[2] The court said (p. 698):

". . . Where rural property is concerned, the differing conclusions as to a duty to inspect reflect conflicting notions as to the proper balance to be drawn between unduly burdening the landowner with a duty to undertake costly affirmative action and protecting travelers on the public highway from injury caused by conditions over which they have no control. . . ."

But when you pass from the merely rural to remote and little-used roads through forest lands, the cases, though few, seem to be unanimous that there is no duty to inspect. *O'Brien v. United States, supra; Lemon v. Edwards* (Ky. 1961), 344 S. W. (2d) 822. In the *O'Brien* case the trial court had said (p. 697):

---

[2]Pro: Noel, "Nuisances from Land in its Natural Condition," (1943), 56 Harv. L. Rev. 772, 789.

See also, 29 Mich. L. Rev. 1098 (1931);

*Medeiros v. Honomu Sugar Co.* (1912), 21 Hawaii 155.

Anti: *Zacharias v. Nesbitt, supra; Chambers v. Whelen, supra;* Prosser, Law of Torts (2d ed.) p. 431.

" ' . . . It is unthinkable that the Oregon courts would impose upon the owners of forest lands, adjacent to little-used roads in sparsely-settled areas, the duty to inspect and remove trees which are likely to fall because of natural decay. . . . ' "

In *Lemon,* the court said (p. 823):

"We think that at least with respect to forest lands adjacent to little-used roads in sparsely settled areas there is a sound basis for not imposing upon the landowner a duty of inspection to determine whether, through natural processes of decay, trees on the land have become dangerous to users of the road. The basis is that such a duty would be an unreasonable burden in comparison with the risk involved.

"In the instant case the land along the road was densely wooded. The tree in question stood among other trees some fifteen feet off the roadway. The owner did not reside on the tract and the evidence showed only that he had traveled the road perhaps four or five times a year. There was little use of the road other than by persons occupying the camps at the lakeshore. Under these circumstances we think the owner did not have the duty of inspection. There is no evidence that he had actual knowledge of the dangerous condition of the tree."

The bank argues persuasively that these cases should govern the present situation and that, having no actual knowledge of the dangerous condition of the tree, it should have been dismissed from the action. However, it is our view that the present case should not be governed by the *O'Brien* and *Lemon* cases because of certain circumstances deemed to be distinctive.

The road, though remote, was used extensively by hunters during the deer and elk season; and, more important, the property on which the tree stood was not forest land, in its natural state, but land which had recently been logged. We deem it to be a jury question as to whether the bank had constructive notice of the hazardous condition caused by the logging operation, which involved the further jury question of whether there was any duty on the bank to have informed itself as to the status in which its property

along the road was being left by the logging operation. While no one who had seen this tree before it fell testified that it was regarded as hazardous, there was testimony that if it had been "good timber" the loggers would have taken it.

It was the basic theory of the plaintiffs, as stated by counsel, that when the loggers

". . . cut down the protective timber around from this snag and the other snags adjacent to the road, they increased the hazard. . . ."

The trial court properly concluded that there was no duty to inspect and no liability so far as the owner was concerned (absent knowledge of a hazardous condition), so long as the forest remained in its natural condition; that the liability of the owner, if any, must be predicated on a dangerous condition created on its land, as a result of the logging operation, of which the owner knew or should have known; and presented the case to the jury on that theory.

We find no error in the trial court's instructions as to the basis of the bank's liability. The jury brought in a verdict for the bank, and it may well have concluded that the bank had no actual or constructive notice of the hazardous condition created by the logging operation. The verdict could be readily sustained on that basis, and we come now to a consideration of whether there was any trial error which makes a new trial necessary so far as the bank is concerned.

Our determination that there was no case to go to the jury, so far as Braden was concerned, eliminates the necessity of considering claimed trial errors[3] relating to the case against him and to the requested instructions on concurring negligence.

We are satisfied that the instructions, relative to contributory negligence, were properly given; and that it was a jury question whether ordinarily prudent and cau-

[3]With reference to question raised relative to the Braden deposition, counsel are referred to *Vannoy v. Pacific Power & Light Co.* (1962), 59 Wn. (2d) 623, 625, 369 P. (2d) 848, decided subsequent to the writing of the briefs in this case.

tious persons would have been driving on the county road under the conditions existing at the time the tree fell.

The trial court's refusal to instruct on the plaintiffs' theory of nuisance, as well as negligence, was proper. Supporting that theory, the plaintiffs content themselves with a citation of RCW 7.48.120[4] and the case of *Bruskland v. Oak Theater, Inc.* (1953), 42 Wn. (2d) 346, 254 P. (2d) 1035.

█ The *Bruskland* case has no application to the present situation, it being clearly a nuisance case with no element of negligence involved. If the bank is liable under the "nuisance" statute, it is because there has been an omission "to perform a duty," *i.e.*, remedy a dangerous situation created by the logging operations of which it had or should have had knowledge. This is the same omission which would constitute negligence. As Mr. Justice Cardozo made clear in *McFarlane v. City of Niagara Falls* (1928), 247 N. Y. 340, 160 N. E. 391, 57 A. L. R. 1: Whenever a nuisance has its origin in negligence, the defense of contributory negligence cannot be cut off.

The proposed instructions demonstrate that the plaintiffs' only purpose in attempting to put the "nuisance" label on this action, was to deprive the defendants of their defense of contributory negligence.

The instruction relative to volenti non fit injuria[5] should

---

[4]RCW 7.48.120 defines "nuisance" as follows: "Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property."

[5]The instruction given was as follows:

"If one knowing and comprehending danger voluntarily exposes himself to it though not negligent in so doing he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. This rule is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent thereto. Therefore, before this defense can apply to the plaintiffs here you must find:

"1. That the plaintiffs knew of and appreciated the danger or risk involved, that is a dead tree might fall on them.

"2. That plaintiffs voluntarily consented to expose themselves to

not have been given, there being a complete lack of evidence that either the plaintiff, Larry Albin, or his father who was killed, knew of and appreciated the danger of proceeding along the county road as was done.

■ The trial court's instruction correctly stated the rule and emphasized that there must be evidence that the plaintiffs knew of and appreciated the danger or risk involved, and that their state of mind was controlling. There being no such evidence, it could be argued that the jury was not influenced by this instruction. However, the giving of the instruction indicates to the jury that the court must have thought there was some evidence on the issue; and we have consistently followed the rule that it is prejudicial error to submit an issue to the jury when there is no substantial evidence concerning it. *Reynolds v. Phare* (1961), 58 Wn. (2d) 904, 905, 365 P. (2d) 328; *White v. Peters* (1958), 52 Wn. (2d) 824, 827, 329 P. (2d) 471.

Instruction No. 15[6] should not have been given in this case. We have quoted somewhat extensively the authorities which sustain that statement of the law, if it is limited to forests or timber lands in their natural state. It is not appropriate in the present case where we are concerned with the duty of the owner of land (adjacent to the county road) but recently logged. Whether he has a duty to make some inspection during or after logging operations, we hold to be a jury question.

The claimed comment on the evidence need not be discussed, as a new trial is being granted on other grounds.

---

such danger and in this regard the word 'voluntarily' means that the plaintiff had a reasonable election or alternative, and,

"3. That the exposure was unreasonable, that is that a reasonable person in plaintiffs' position would not expose himself to the danger; that plaintiffs would have not driven his car along the Sky Line Drive on the day and hour in question.

"You are further instructed that in the first two of these inquiries that plaintiffs' state of mind is controlling and there must be evidence before you in the case of such state of mind." (Instruction No. 14)

[6]"You are instructed that the owners of rural mountain timber land bordering a county road are under no duty to inspect for dead or decayed trees." (Instruction No. 15)

The judgment of dismissal against the defendants, Columbia County and Clarence Braden, is affirmed; a new trial is granted against the National Bank of Commerce of Seattle, as trustee under the Fanny E. Weller Trust Fund.

DONWORTH, WEAVER, OTT, and HAMILTON, JJ., concur.

FOSTER, J. (concurring in part, dissenting in part)—While I agree that the appellants are entitled to a new trial against the respondent bank, I cannot agree that it was proper to submit the issue of contributory negligence of the appellant Larry Albin and his deceased father. Nor can I agree that the case was properly dismissed as to the respondent Columbia County.

The court correctly decides that

" . . . A county is obligated to keep its roads in a reasonably safe condition for ordinary travel. . . ."

In my view, it is contrary to public policy to decide that one is contributorily negligent in using a dedicated public highway. Such was the decision in *Osborne v. Galusha,* 143 Wash. 127, 254 Pac. 1086. That accident occurred during a storm in a mountainous region which was heavily timbered. Judge Bridges, for the court, said:

"We think the court was right when he informed the jury that the owner of the stage had a right to assume that the highway was reasonably safe for travel. . . .
" . . . It certainly cannot be held that one driving on the highway, even though he be driving a bus carrying passengers for hire, must be active in looking out for trees off of the right of way which might fall, or go off of the road to investigate any such trees to determine their character. If that duty rests upon any person, it is upon the authorities whose duty it is to maintain the road, and not upon those who travel it. . . ."

Neither the state nor the county can avoid liability for the fall of the tree because it stood upon private property abutting the highway when the tree falls on the highway under the conditions shown by this record. *Inabinett v. State Highway Department,* 196 S. C. 117, 12 S. E. (2d) 848; *Messinger v. State,* 183 Misc. 811, 51 N. Y. S. (2d) 506.

Nor can I agree that the decision of the United States Court of Appeals for the Ninth Circuit in *O'Brien v. United States*, 275 F. (2d) 696, is authority for anything. State law is decided by state courts only. Even in diversity cases, the United States courts are bound by the decisions of the state courts on questions of state law. *Erie R. Co. v. Tompkins*, 304 U. S. 64, 82 L. Ed. 1188, 58 S. Ct. 817, 114 A. L. R. 1487. And when there is no authoritative state decision, as was the circumstance in *O'Brien v. United States, supra,* United States courts only guess at what the state law might be. *In re Stoddard's Estate, ante* p. 263, 373 P. (2d) 116.

O'Brien sued the United States under the Federal Tort Claims Act, 28 U. S. C. § 1346(b), which provides in substance that the United States shall be liable for negligence if a private person would be liable according to the law of the place where the accident occurred. Oregon law controlled. The opinion states that there is no Oregon case in point. Consequently, the court was only speculating as to what the Supreme Court of Oregon would declare the law of that state to be. But here, we are not left to speculate as to the liability of an owner, after the lateral support afforded by the forest in its natural state is removed, because that is settled by *Sullivan v. Mountain States Power Co.,* 139 Ore. 282, 9 P. (2d) 1038, in which the Supreme Court of Oregon declared the Oregon law to be as follows:

"The defendant argues that a rule of law which would require power companies to fell all trees within striking distance of their transmission lines would work a great hardship in a state like ours where trees grow 200 feet tall. But the situation before us does not demand consideration of such a possible rule because it will be observed that the tree which caused this fire is readily distinguishable from the ordinary tree which is likely to be found adjacent to transmission lines. It was a sapling which, having grown tall when surrounded by other trees, was left exposed to the prevailing high wind. Its supporting trees had been removed by logging operations two years previously; in fact, before the high tension line was installed. Moreover, according to the defendant's answer, this tree 'had been greatly weakened' by the logging operations and was 'likely

to fall.' Its distance from the wires was somewhere between 20 and 50 feet. These being the circumstances, it appears to us that the evidence presented a proper basis for a finding that the exercise of due care demanded that the defendant should trim this tree, insulate its adjacent wires, set another pole for the support of its wires, or take some other precaution to protect the property of adjoining owners from danger. We have not overlooked the fact that the defendant's superintendent testified that he inspected the right of way every time he passed along this road, but even this testimony did not demand a ruling in its favor upon the motion for a directed verdict. The jury heard the testimony of the defendant's witnesses wherein they swore it was the practice of power companies to remove trees that endangered their lines wherever it was possible to do so. The degree of diligence which this practice demanded, and which was necessary to constitute the exercise of due care, was, partially at least, a question of fact for settlement by the jury's verdict: Shearman and Redfield on the Law of Negligence (6th Ed.), § 53."

Accord: *Beresford v. Pacific Gas & Elec. Co.*, 45 Cal. (2d) 738, 290 P. (2d) 498, 54 A. L. R. (2d) 910; *Irelan-Yuba Gold Quartz Mining Co. v. Pacific Gas & Elec. Co.*, 18 Cal. (2d) 557, 116 P. (2d) 611.

Nor can I assent to the dismissal of respondent Columbia County. The liability of the county under the evidence presented a question for the jury's determination. There is both evidence of actual notice to the county, and a jury would be justified in inferring in addition that the county had constructive notice.

There was evidence that the wind velocity at the time and place in question averaged from 30 to 35 miles per hour with gusts from 40 to 50 miles per hour and that such winds could be expected every winter. Heavy forests reduce the ground velocity of the wind, but the removal of lateral support by clear-cut logging increases the exposure of isolated trees to higher wind velocities, and when snags are left standing adjacent to public highways a man-made hazard to the lawful users of such highways is created. Safety standards for logging operations require the removal of snags when the merchantable timber is logged.

The tract had been logged, and the logging had been completed three weeks prior to the fatal occurrence. Three dead trees or snags were left standing. The tree in question was 95 feet in height and stood only 43 feet from the center of the roadway and but 23 feet from the right of way. There is abundant proof that it was dead. County road crews worked in the vicinity during the logging operations. A deputy sheriff cut wood there in that interval and knew that the tract had been logged and that the tree in question was dead.

During the hunting season, Nimrods from far and near are attracted to the Blue Mountains because of the elk. Annually, news dispatches of hunters being trapped in this area are commonplace. There is abundant evidence that the Skyline Drive is well traveled, especially so during the open season for elk.

Under the tests laid down by the court, the evidence of actual notice to the county of the hazard created by recent logging presented a question for the jury and not for the court to decide. The completion of extensive logging operations three weeks prior to the accident was a sufficient circumstance to present a jury question on the constructive notice test.

Appellants are entitled to a new trial against Columbia County.

FINLEY, C. J., ROSELLINI, and HUNTER, JJ., concur with FOSTER, J.

---

December 13, 1962. Petition for rehearing denied.